CAROLINE PUHR, Respondent, v. GRAND LODGE GERMAN ORDER OF HARUGARI, Appellant.

St. Louis Court of Appeals, November 29, 1898.

1. **Benevolent Society:** GRAND AND SUBORDINATE LODGES. In the case at bar the grand lodge is the creator and the subordinate lodges are the creatures, distinguishing this case from the case Weyrich v. Grand Lodge, 47 Mo. App. 301.

2. **Beneficiary**: CONSTRUCTION OF CONSTITUTION AND BY-LAWS: MEMBER IN "GOOD STANDING": PAYMENT OF DUES. Where a certificate of a beneficiary entitled her to receive from the defendant lodge the sum of $700 at the death of a member, her husband, provided the deceased at the time of his death was a member of the order "in good standing;" it is held that under the constitution and by-laws of defendant society a mere delinquency in the payment of dues does not defeat the "good standing" of the member. So long as the member has the right to pay, and the lodge forbears to take action he remains in "good standing."

*Appeal from the St. Louis City Circuit Court.*—HON. HORATIO D. WOOD, Judge.

AFFIRMED.

O. J. & R. LEE MUDD for respondent.

The case at bar is not within the rule of Weyrich v. Grand Lodge, 47 Mo. App. 391. Here there is an express undertaking of the grand lodge to pay to the beneficiary. Secs. 5 and 6, Statutes of the Mortuary Fund. All members of the lodge in good standing are members of, and are entitled to participate in, the Mortuary Fund. Sec. 2, Statutes of the Mortuary Fund. Puhr was never suspended or expelled during his lifetime. The lodge tried after his death to make up a record of suspension, but it goes with the saying that no act of the lodge done after Puhr's death can avail against his heirs or beneficiaries. The burden of showing expulsion is on the defendant order. What does the defendant show? As the law: The machinery of the law of the order for expulsion. Statutes of the Mortuary Fund of the German Order of Harugari, sec. 4; Constitution for Subordinate Lodges, sec. 1, art. 3; Special Provisions and Regulations of the Grand Lodge, sec. 1, art. 3; Lodge By-laws, sec. 8. The trial court sitting as a jury was not bound to find on the evidence of witnesses Heild and Landvogt that

Puhr had renounced or abandoned his membership. For, even though, as said in Stuart v. Knights of Honor, 36 Mo. App., that such declarations are competent evidence of abandonment, and although membership may be terminated by abandonment, yet the probative force of this testimony may be determined by the triers of the fact and may be determined unworthy of credence. Gregory v. Chambers, 78 Mo. 294, loc. cit. 298, 299; Wolff v. Campbell, 110 Mo. 114, loc. cit. 120; Huston v. Tyler, 140 Mo. 252, loc. cit. 266, 267. Because as said in Gregory v. Chambers, *supra*, "There may have been something in the conduct of the witnesses before the court or in the relation they bore to the parties which can not appear before us." "All the testimony was on one side, but the jury disregarded it, and the circuit court, who heard the witnesses, sanctioned the verdict of the jury. We must infer from this that the circuit court was satisfied with the course of the jury. The credit due to witnesses is a matter peculiarly for a jury."

FISSE & KORTJOHN for appellant.

The defendant, the Grand Lodge of Missouri, never promised to pay any death benefit. It was only the conduit through which the money passed to the representatives of deceased members. The liability rested on the subordinate lodges. See section 2 of the Laws of Mortuary Benefit Fund; Weyrich v. Grand Lodge Ind. Order True League, 47 Mo. App. 301. Under the constitution of the subordinate grand lodges Henry Puhr was not a member of the German Order of Harugari at the time of his death, and therefore could not be entitled to the mortuary fund, even

though he had paid all his assessments. See section 1, article 3, of Constitution of Subordinate Lodges; section 1, article 3, of Special Provisions and Decrees of the Grand Lodge of Missouri. Even though the deceased was a member of the order at the time of his death, yet his representatives were not entitled to participate in the mortuary fund. See section 4 of the Laws of the Mortuary Fund. In order that his representatives might be entitled to the benefits of the mortuary fund, Henry Puhr must at the time of his death have been not only a member of the German Order of Harugari, but a member in good standing, according to the by-laws and books of his lodge. See section 5, Laws Mortuary Benefit Fund; also section 6; also sections 2 and 5 of article 3 of the by-laws of Goethe Lodge; McMahon v. Supreme Council, 55 Mo. App. 468; Supreme Council Royal Templars of Temperance v. Amanda A. Curd, 111 Ill. 284; McMurry v. Supreme Lodge, Knights of Honor, 20 Fed. Rep. 107; sec. 2, art. 3, Mortuary Benefit Fund. The deceased, prior to his death, renounced his membership of the order, declined to pay any more dues, and asked to have his name stricken from the rolls. This was a voluntary abandonment of his membership and severed his connection with the order, even though the lodge and the order declined to strike his name from the rolls. Stewart v. Supreme Council, 36 Mo. App. 319; Brografe v. Knights of Honor, 26 Mo. App. 219; Cramer v. Masonic Life Ass'n, 9 N. Y. Sup. 356.

BIGGS, J.—The German Order of Harugari is a national benevolent organization, with state organizations, called respectively "the Grand Lodge of the German Order of Harugari" of the state where established. The state lodges are incorporated in the various states, and the defendant is the incorporated Grand Lodge for

the State of Missouri.  Under the grand lodges are subordinate lodges, which are not incorporated.  The grand lodge of a state is composed of not less than five members, known as ex-bardes, who are members of subordinate lodges, and each grand lodge has a grand treasurer.  Under the constitution of the grand lodge of a state, the corporation has authority to establish what is called a "Mortuary Fund," which fund is created by assessments against the various subordinate lodges of the state, and the quota of each subordinate lodge is realized from monthly assessments against its members.  The constitution and by-laws of the grand lodge provide that out of this mortuary fund the grand treasurer of the lodge shall pay to the heirs of each deceased member, or to such of his heirs as by will he may direct, the sum of $700, *provided the deceased, at the time of his death, was a member of the Order "in good standing."*  The plaintiff is the widow of Henry Puhr, who, prior to his death, to wit, August 7, 1896, had been a member of Goethe Lodge No. 158 of the German Order of Harugari of the State of Missouri.  She sues, in this action, to recover the sum of $700, which she claims is due her from the defendant as the widow and heir of Henry Puhr.  The defendant denies liability for the alleged reasons that Puhr, at the time of his death, was not a member of the order or of the "Mortuary Fund," or if he was, he was not "in good standing."  And the defendant made the further defense that it had not contracted to pay the beneficiaries of Puhr anything; that if any liability existed it was against the subordinate lodges of the state.

The cause was submitted to the circuit court without a jury.  Pursuant to section 2135 of the Revised Statutes of 1889, the court made the following findings

of fact: "The plaintiff is the widow of one Henry Puhr, who, prior to his death, had been a member of Goethe Lodge No. 158 of the German Order of Harugari of the state of Missouri.

FINDING of facts.

"He paid his dues and assessments for the months of January, February, March and April, 1896, and prior thereto, but paid no dues and assessments for the months of May, June and July, 1896, and died August 7, 1896.

"The German Order of Harugari of the United States is a national organization, having in various states a state organization called the 'Grand Lodge of the German Order of Harugari.' These state lodges are incorporated in the various states, and the defendant is an incorporated Grand Lodge for the state of Missouri, whose constitution is prescribed by the national organization. Under this state lodge are subordinate lodges, which are not incorporated, and to one of these lodges, called Goethe Lodge number 158, German Order of Harugari, the said Henry Puhr belonged. The Grand Lodge was composed of not less than five members, known as Ex-Bardes, who are members of subordinate lodges, and among the officers of said lodge was a Grand Treasurer. The Grand Lodge instituted what is called a mortuary fund, under power given it by section 1, article 3 of the constitution for subordinate lodges, prescribed by the Grand Lodge of the United States, said State Grand Lodge prescribed the statutes or laws governing it, its purposes, who should participate in it, the amount to be paid on the death of a member of a lodge, the action to be taken by subordinate lodges on failure of a member to pay his assessment, and assumed exclusive jurisdiction in the "conduct of the mortuary fund and the administration of all business appertaining thereto."

The relation of the Grand Lodge to the subordinate lodges and to this fund are more fully expressed in the extracts from constitutions and by-laws hereinafter set forth.

Assessments were called by the Grand Lodge for the months of May, June and July, and these calls were published in the usual manner in the official organ, and read out in the subordinate lodges, including the lodge of which Henry Puhr was a member.

On May 1, 1896, the committee of the mortuary fund, consisting of the grand secretary, grand bards and grand treasurer, in order to pay death benefits due, levied two assessments of $1 each against each member of the order, and notified Goethe Lodge thereof by means of the official organ. A like condition existed on the first days of June and July, 1896, and two assessments were levied in like manner and like notices given to Goethe Lodge and were received by said lodge. On May 1, 1896, said lodge notified each of its members to pay these assessments and fifty cents monthly dues. Similar notices were given to pay the assessments levied in June and July and the dues for those months. This made the sum of $2.50, payable at the last meetings in May, June and July. Henry Puhr paid none of these assessments.

James Burbach, who was the financial secretary of the lodge, sent to said Puhr in the latter part of June, 1896, a registered letter to the effect that he owed two months' dues, and assessments and that unless they were paid pursuant to the provisions of paragraph 4 of the mortuary fund, his name would be stricken from the list of members. At the meeting held on the ninth day of July, 1896, "the brother accountant was ordered to notify the three brothers Eckoff, Hurrs and Puhr,

through registered letters, that they owe for three months assessments and dues." The last meeting of the lodge in July was held July 23, 1896. This was the last meeting prior to the death of Henry Puhr and *no action* was taken at this meeting in regard to the delinquency of Henry Puhr, and in point of fact his name was not at any time stricken from the rolls by any action of his lodge.

As above stated, Puhr died on August 7, 1896. The first meeting of his lodge in August was held August 13, 1896. At this meeting the secretary of the lodge made the following addendum to the minutes of July 23, 1896: "As the brothers all know * * * and Henry Puhr were notified by registered letter on account of nonpayment of their dues and assessments for three months, but did not pay up to the last of July. Consequently they are, according to the laws, statutes and by-laws of the mortuary benefit fund, stricken from the roll of membership of Goethe Lodge No. 158, German Order of Harguari on account of non-payment of their dues and assessments, by order of the lodge of the above date.

"in F. L. & H.
"(Signed)    MICH JACOBY, O. B.
"GEO. F. RUFF, Secy."

Again in the ledger there is written at the bottom of Henry Puhr's account the following:

"Stricken from the list of Membership July 31st, 1896. Died August 7th, 1896." This was evidently written after the death of said Puhr.

There is also evidence uncontradicted that Puhr stated to members of the order who told him that he was delinquent that he did not care to belong to the lodge, or did not want to belong to it, and that he threw the notice which the lodge sent to him of his

delinquency in the stove. In the monthly report of Goethe Lodge to the Grand Lodge, dated July 1, 1896, under the head of "Names of those who owe for more than one month and are not entitled to mortuary moneys" appears the name of Henry Puhr. In the same report, under the head "Names of those who were stricken from the rolls for nonpayment of dues," no names appear. The monthly report of the Goethe Lodge to the Grand Lodge dated August 3, 1896, under the caption "Names of those stricken from the rolls for nonpayment of dues," contains the name of Henry Puhr. But the records of Goethe Lodge do not show that he was at any time prior to his death stricken from its membership. The deceased made no testamentary disposition of any part of his claim to the mortuary fund.

Then follows the constitution and by-laws of the defendant and of Goethe Lodge, which need not be set out in full in this opinion. In disposing of the various exceptions we will call attention to portions that we deem especially pertinent.

The conclusions of the circuit judge upon the foregoing facts were as follows:

"I am of the opinion that under the foregoing constitution and by-laws, some action on the part of Goethe Lodge judicially declaring a forfeiture was necessary to terminate Puhr's membership. By the great weight of authority notice to the member and a declaration of forfeiture by the lodge, is necessary to terminate the "good standing" of a delinquent member. Niblack Ben. Societies, p. 541, 542.

"Notice of intention to strike his name from the list was given, but no action was taken thereon by the lodge prior to his death. Hence, I find that Henry Puhr, was at the time of his death a member in good

standing within the meaning of the laws of the order.

"Upon a fair construction of the laws of this order, I am of the opinion that the individual members bound themselves to pay lodge dues and assessments levied by the defendant Grand Lodge on the respective subordinate lodges, and each lodge bound itself to pay the assessments thus levied to the Grand Lodge. The Grand Lodge determined the quota contribution due from each lodge, and by section six of the mortuary fund obligated itself to pay to the widow of a deceased member the sum of $700.

"I can not assent to the position taken by counsel for the defendant that under section two of the mortuary fund, the promise in this case was that of the lodges collectively and not of the Grand Lodge.

"I am clearly of the opinion that construing the laws of this order in such a manner as to effectuate their intent and to harmonize them as a whole, the defendant in this case is liable.

"H. D. WOOD, Circuit Judge."

Thereupon judgment was entered for the plaintiff for the full amount, and the defendant has appealed.

The first contention of the appellant is that under the constitution and by-laws of the defendant and of Goethe Lodge the defendant is merely an intermediary or disburser of the mortuary fund as agent of the subordinate lodges, and that if there is any liability at all it is against the latter. Counsel rely on Weyrich v. Grand Lodge, 47 Mo. App. 301, as decisive of the question. The sections of the constitution and by-laws bearing on the question are set out below. Section two, article three of the laws of the mortuary fund reads: "All the lodges of the German Order of Harugari in the state of Missouri have jointly bound themselves upon the death of a brother in good standing to pay the sum

of $700 to his representatives.'' Concerning the crea-
tion and management of the mortuary fund it is pro-
vided as follows: ''The Grand Lodge of the State of
Missouri German Order of Harugari, for the institution
of the Mortuary Fund, of the German Order of Haru-
gari, of the State of Missouri, established the following
law:''

''Section 1. PURPOSE.—The Mortuary Fund of the
D. O. H. of the State of Missouri is founded chiefly to
protect the families and relatives of deceased brothers
of the D. O. H., who are thrown upon his support,
from want after his decease, and shall make use of the
payable Mortuary Fund moneys for their
support. Only such debts as are caused for
the burying of the deceased brother, and
such bank dues as provided by section 4, may be paid
from this money. Other creditors and administrators
have no claims thereto.''

*By-laws of lodge.*

''Sec. 3. ENTRANCE MONEY. — Every subordinate
lodge is bound at the acceptance of candidates to take
up the following entrance money for the Rèserve Fund
of the Mortuary Fund. That is to say, from candi-
dates at the age from

35 years and not yet 36 ............................................$1 00
36–40 years and not yet 41 . ..... ... ............. ..... ........ 2 00
41–45 years and not yet 46 ................................. .... 3 00
46 years and not yet 47................................. .......... 4 00
47 years and not yet 48................................ ............ 5 00
48 years and not yet 49 ..................................... ...... 6 00
49 years and not yet 50 ................. ,..... ... ............ ,..... 7 00

''Sec. 4. CONTRIBUTIONS.—The contributions for
the death fund moneys of $700 which are to be paid,
are not raised for each death separately, but through
assessments, in a sum in such case, of one dollar per
member, in advance, by the Grand Secretary from all
the lodges in the state of Missouri, and a further assess-
ment is called in, when the sum on hand no longer

suffices for further payment of deaths. Each lodge is jointly and separately liable for contributions, according to the number of members given in their last monthly report.

"All assessments for the Mortuary Fund are due in the last meeting of each month."

"Members who have not paid their assessments at the legal time, shall be notified by the Grand Secretary or accountant of the lodge, of the date of the lodge session, that in case they do not pay their assessments in arrears, in course of the next following month, they will in the last meeting in this month, be stricken from the membership list of the Mortuary Fund."

"Every Lodge has the selection of the way seeming to it most safe, of forwarding its contribution quota and bears the risk of the forwarding."

"Sec. 5. INVESTITURE WITH RIGHT OF RECOVERY. The hereinafter designated heirs of a deceased brother are entitled to the $700 death moneys only in case the lodge of such brother at the time of his decease has not been excluded on account of arrearages in contributions, or in consequence of a judgment, and the brother himself at his death was a member in good standing according to the by-laws and books of his lodge.

"Expulsion of a brother by his subordinate lodge results in a like expulsion of said brother from the Mortuary Fund."

"Sec. 6. At the death of a brother of a lodge of the state of Missouri German Order of Harugari, if the conditions put in the foregoing section 5 are fulfilled, there shall be paid out by the Grand Lodge of the state of Missouri the sum of $700 in lawful money of the United States, in the following manner, etc."

"Sec. 9. MANAGEMENT. — The conduct of the mortuary fund and administration of all business thereto appertaining stands under the executive juris-

diction of the Grand Lodge of the state of Missouri,
and is committed to the officers elected as they are
prescribed in the corporation acts as mortuary fund
committee. The Grand Bard must, according to his
judgment, fix committee sessions for the disposition of
all business coming before the committee, must pre-
side at the same, and must give the order to the
Grand Treasurer for the paying out of death moneys.

"The Grand Secretary must conduct the corre-
spondence, as well as the necessary books and register,
make bills for contributions, collect the same and remit
to the Grand Treasurer; also prepare monthly reports."

"The Grand Treasurer must effect the payment
out of the death moneys and preserve receipts, proofs
and documents showing legitimacy.

"The Deputy Grand Bard and Grand Overseer
constitute the Finance Committee.

"Immediately after receiving the monthly reports
of the subordinate lodges the appropriate monthly
reports from the death fund committee are to
be prepared. The contributions quota for each lodge
is to be determined and each lodge informed thereof.
An exact report must be submitted by the Mortuary
Fund Committee to the Grand Lodge in its session in
the month of August of each year and the members
of the Mortuary Fund Committee must turn over to
their successors moneys, books and letters."

"All surplus moneys out of the Mortuary Fund
turned over by the Grand Treasurer to the Board of
Management of the Grand Lodge are to be invested by
the latter to the best interests of the Order, in the
name of the Grand Lodge, and report must be made to
the "annual session."

"Appeals from resolutions and decisions of the
Mortuary Fund Committee must be made to the Grand

Lodge of the state of Missouri, and by it finally determined.

"Sec. 10.   CHANGES.—Changes of these Mortuary Fund Laws can only legally take place in the general session of the Grand Lodge in August of each year by two thirds majority of the representatives present. All resolutions which were formerly adopted by the Grand Lodge of the state of Missouri German Order of Harugari with reference to this Mortuary Fund which stand in conflict with these laws are herewith repealed."

We think that there is a clear distinction between the case at bar and the Weyrich case, *supra*. In the case we have here there is a direct promise of the defendant to pay (section 6, *supra*). In the Weyrich case there was no such promise, either express or implied. In the Weyrich case the existing local lodges of the order created the defendant (the Grand Lodge), and they evidently did this merely for the purpose of having some central body to act as their disbursing agent in the payment of death losses. The amounts of the benefits to be paid, and the manner of the collection of assessments were left entirely with the local lodges. In the present case the Grand Lodge is the creator, and the subordinate lodges are its creatures. The latter are merely parts of the machinery through which the money for the Mortuary Fund is collected. This fund is entirely under the control of the Grand Lodge. It determines the amounts of the monthly collections, and the quota of each subordinate lodge is fixed by it. In discharge of their obligations as assumed under section 2, article 3, *supra*, the local lodges make and collect from its members the necessary assessments to meet the demand of the Grand Lodge. We are of the opinion that the conclusion reached by the circuit court as to this question was right.

It is undoubtedly true that to entitle the plaintiff to recover it must appear that at the time of his death Puhr was a member in good standing of the defendant order and also of the Mortuary Fund. The appellant claims that under the laws of the society Puhr at the time of his death stood expelled from membership in both. The facts as found by the court as to the assessments in April, May and June, 1896, and the failure of Puhr to pay them, although duly notified, and the action of the defendant and of Goethe Lodge in reference to such failure are not controverted, the contention being that the judgment of the court on this question is wrong under the facts. An intelligent discussion of this assignment requires particular reference to the laws of the order in respect to the expulsion of members. A paragraph in section 4, *supra,* of the statutes of the Mortuary Fund is as follows: "Members who have not paid their assessments at the legal time, shall be notified by the Grand Secretary or accountant of the lodge, of the date of the lodge session, that in case they do not pay their assessments in arrear, in course of the next following month, they will in the last meeting in this month be stricken from the membership list of the Mortuary Fund." This section is a mere warning to the member. It does not say that the name of the delinquent member must be stricken from the roll of membership nor does it say who shall have authority to do it. To understand its scope and meaning it must be read in connection with other provisions. Section one of the constitution of Goethe Lodge provides that "the monthly contributions as well as other assessments, are due at the last session in the month of every subordinate lodge. Brothers who are in arrears for three months with respect to their contributions, are to be stricken from the list of members, and every subordinate lodge may at the last

meeting of the last month authorize its officers to cause such striking to be made before sending the reports to the Grand Lodge." Section one, article 3, of the special provisions of the Grand Lodge for the government of subordinate lodges provides: "The monthly dues, as well as every other tax, must be paid in the last session of the month of every subordinate lodge. Brethren who are in arrears on account of their dues for three months, are to be stricken from the list of membership; that is to say, every subordinate lodge may in the last session of the last month order its officers to strike from the rolls such names prior to their delivering their reports to the Grand Lodge." Section eight, article 4, of the by-laws of Goethe Lodge reads: "Members who owe three months' dues and assessments *shall* in the first meeting of the fourth month be stricken from the membership roll." (The italics are ours.) Under these sections the delinquency of the member does not *ipso facto* result in a forfeiture of membership until the first meeting of the local lodge in the fourth month after the default. (Section 8, art. 4, *supra.*) A construction which summarily deprives the member of his rights is not favored, and it will not be adopted if any other is possible. We agree with the learned circuit judge that some affirmative judicial action was necessary to effect an expulsion of Puhr. Niblack on Benefit Societies, sec. 287. No such action was taken. At the last meeting in July Goethe Lodge could have directed its officers, in making their report to the grand lodge, to strike his name from the list of members, in the event he failed to pay during that month. But no such authority was given, and the action of the officers in reporting to the grand lodge that he had been expelled was futile. The attempt at the August meeting, which was after the death of Puhr, to amend the proceedings of the July

meeting so as to show that such authority was given, was also futile. We therefore conclude that the circuit court was right on this branch of the case.

Lastly it is urged that Puhr was not a member in good standing at the time of his death. What is meant by the term "good standing". Mr. Bacon in his work thus defines it: "A member of an order at the time of his death in arrears for dues and assessments, the time for collection of which had fully expired, is by reason of these facts not in good standing within the meaning of a benefit certificate requiring the member to be in good standing in the order at the time of his death, to entitle the beneficiary to recover." Bacon on Ben. Soc., sec. 414, page 821. Under this rule a mere delinquency in the payment of dues does not defeat the good standing of the member. So long as the member has the right to pay and the lodge forbears to take action, he remains in good standing. As Goethe Lodge at its July meeting failed to direct its officers, in making their report to the Grand Lodge, to strike Puhr's name from the list of members, his right to pay the delinquent dues and assessments existed at the time of his death. Had he lived until the August meeting without having paid, he would have stood expelled under section 8, article 4, *supra*, of the by-laws of the lodge. In reference to some societies the decisions hold that "good standing" in a society not only implies that a party is a member of the society, but that he has a good reputation therein. This definition has application to societies organized for the propagation of a particular virtue, such as temperance. For a member of such society to drink intoxicating liquors would be a reproach and scandal on the society, and would be such a moral delinquency as to necessarily impair his good reputation in the society. A mere

*Margin note:* MEMBER in "good standing:" meaning of.

financial delinquency in a case like we have here involves no moral turpitude, and hence the rule or definition can not apply.

Our conclusion is that the case has been properly tried, and the judgment will therefore be affirmed.

All concur.