# SMITH et al. v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, Appellant.

### Division Two, December 23, 1903.

1. **Insurance:** PLEADING: GOOD STANDING: SUSPENSION: EXPLANATION. The petition alleged that the insured was in good standing at the time of his death, and the answer charged that he had been suspended for failure to pay dues, and in the reply plaintiff admitted the suspension but in explanation set up certain facts which made such suspension no defense to the action. *Held*, that these allegations in the reply were not a departure from the cause of action stated in the petition, and, therefore, they should not have been stricken out.

2. **Evidence;** ADMITTED WITHOUT OBJECTION: SUBSEQUENT OBJECTION. Because a litigant has sat by and permitted incompetent evidence to be admitted without objection, he is not thereby estopped to object to such evidence when subsequently offered.

3. **Insurance:** SUSPENSION: FAILURE TO PAY DUES: SICKNESS. Where the constitution and by-laws of a fraternal beneficial association provide that the failure to pay dues for the month for which they were due operates as a suspension of the member, such failure, *ipso facto*, suspends the member without any action of the board on the matter. And that is the effect although the member was delirious and unconscious when the assessment became due.

4. ———: ———: ACCEPTANCE OF DUES BY CLERK. The laws of the company, *ipso facto*, suspended a member who failed to pay his dues on or before the first day of the next month, and the clerk testified that he reported deceased suspended, but made it a rule to accept the dues of any member thus suspended who paid his dues any time within the month after the suspension, provided he was then in good health, and this action was authorized by the by-laws. *Held*, that this acceptance of the dues was a compliance with the company's laws, and not a modification or waiver of those laws, and, hence, this course of conduct by the clerk did not operate to waive any provision of the laws which made a failure to pay dues, *ipso facto*, a suspension of the member.

5. ———: ———: NOTICE OF SICKNESS. The company's by-laws provided that if a member in good standing became sick, and while in that condition should become unable to pay his assessment and

dues, he should not be suspended, but it should be the duty of the local camp to pay them, provided "he shall notify the clerk of his camp in writing, of said disability each month before he becomes delinquent." *Held,* that this by-law is complied with if the notice is given either by the member or by some other person for him. But a simple notice that the member is sick is not sufficient; it must also state that by reason of such sickness or disability he was unable to pay.

6. ———: ———: ———: INABILITY TO PAY: INSTRUCTION. In such case an instruction which predicates the insured's right to recover on a notice which simply said he was sick, and said nothing of his inability to pay, is erroneous.

7. ———: NOTICE: SUFFICIENCY. The construction of the notice in such case is for the court, and not for the jury. Whether or not it was such a notice as the by-laws of the company required should be determined by the court, and not submitted by instructions to the jury for determination.

8. **Untimely Motion for New Trial.** A motion filed more than five days after judgment to set aside the order overruling the motion for a new trial, on the ground of newly-discovered evidence, should be overruled.

Appeal from Cooper Circuit Court.—*Hon. Jas. E. Hazell,* Judge.

REVERSED AND REMANDED.

*Brome & Burnett* and *J. W. Jamison* for appellant.

(1) Defendant's motion to strike out should have been sustained. Pier v. Henrichoffen, 52 Mo. 333; Lanitz v. King, 93 Mo. 513. (2) It was error to admit evidence tending to show that deceased was delirious and unconscious during his last illness. This condition was no legal excuse for non-payment of dues and assessments. 2 Beach on Insurance, sec. 981; Thompson v. Insurance Co., 104 U. S. 766. (3) By his contract with defendant order, the certificate sued upon became null and void, upon the failure of the deceased member to pay the clerk of his camp, on or before the first day of the month, dues and assessments levied against him,

and he also, by reason of such failure, stood suspended and was not entitled to any benefits of the order. His failure to make these payments was a self-executing suspension of his membership, and required no trial or adjudication of his expulsion, and was a deprivation of all rights, benefits and privileges pertaining thereto, and there can be no recovery by the beneficiaries on the certificate. Smith v. Knights of Father Matthew, 36 Mo. App. 184; Boyce v. Royal Circle (St. Louis Court of Appeals), 73 S. W. 300. As by the terms of the contract his certificate, upon non-payment of assessments and dues, became *ipso facto* void, it was unnecessary that the suspension should be judicially determined by any judicatory of the order. Borgraffe v. Knights of Honor, 22 Mo. App, 127; Ellerbe v. Faust, 119 Mo. 653; McMahon v. Maccabees, 151 Mo. 522; Harvey v. Grand Lodge, 50 Mo. App. 472; Sheele v. State Home Lodge, 63 Mo. App. 277; Chadwick v. Order of Triple Alliance, 56 Mo. App. 463. And it was immaterial whether he was reported suspended by the clerk or whether his name was, in fact, struck from the roll of members. Rood v. Ben. Ass'n, 31 Fed. 62. It was not necessary that defendant show that deceased had been suspended or expelled from the local camp. Hogins v. Supreme Council (Cal.), 18 Pac. 125. There was no waiver of any condition or requirement of defendant's constitution and by-laws, or of the contract of the deceased, through any act of the clerk of the local camp. The acceptance by him of assessments, under the circumstances, was a compliance with and not a modification or waiver of defendant's law. (4) Plaintiffs attempted to avoid the fact of a forfeiture for non-payment by introducing testimony with a view to showing compliance with section 126 of defendant's by-laws. This section, in effect, provides that if a member, while in good standing, shall become sick and, while in that condition, shall be unable to pay his dues and assessments, he shall not be suspended, but it shall be the duty of the local camp clerk to pay his

assessments, provided, he shall "notify the clerk of his camp, in writing, of said disability each month before he decomes delinquent." There is no provision in the by-laws for notice from any other person than the member. C. E. Smith could not bind defendant by giving notice. A creditor of the sick member would be without authority to do so. Scheele v. State Home Lodge, 63 Mo. App. 277. There being no agreement as to a definite mode of service, the proper mode was a personal service, as required at common law. Wetchel v. Noah's Widows' & Orphans' Society, 84 N. Y. 28. A liability could not attach from merely mailing the notice if it was not actually received. Castner v. Ins. Co. (Mich.), 15 S. W. 452; Ryan v. Kelly, 9 Mo. App. 396; Doyle v. Railroad, 113 Mo. 285; Bishop v. Ins. Co., 85 Mo. App. 302. (5) There was no recital contained in the notice that the deceased was unable to pay his assessments, yet the court in its instructions submitted the question to the jury as to whether the deceased caused notice in writing stating his condition and inability to pay to be served upon B. F. Bedwell. It was error for the court to tell the jury, by said instruction, what inference they might draw with respect to the receipt of the same from the fact, if it was a fact, that it was placed in the postoffice. Speer v. Burlingame, 61 Mo. App. 96; Couquette v. Baraba, 28 Mo. 491. It was error to instruct the jury as to what conclusion they should or should not draw from any particular fact in evidence. Lesser v. Boekhoff, 35 Mo. App. 224. Said instruction is bad in the respects that it singles out and gives undue prominence to particular facts and is argumentative. Railroad v. Stock Yards, 120 Mo. 541; State v. Hibber, 141 Mo. 549; McClure v. School District, 66 Mo. App. 884; Schwenk v. Anthony, 96 Mo. App. 420.

*J. F. Rutherford* for respondents.

(1)   Defendant's motion to strike out part of plain-

tiff's reply was properly overruled. Ehrlich v. Ins. Co., 103 Mo. 240; Water Co. v. Pierce City, 61 Mo. App. 471. Under an allegation in the petition that all the conditions of the policy and laws had been complied with, proof of waiver is permissible and is proof of performance.   McCullough v. Ins. Co., 113 Mo. 616; James v. Life Ass'n, 148 Mo. 1.  (2)   Appellant will not be heard to complain in this court of the action of the trial court in admitting evidence of the mental condition of Smith during his last illness.   The first objection made to this character of testimony was to the testimony of Charles E. Smith.   Two witnesses had previously given similar testimony, which had been admitted without objection by defendant's counsel, and said witnesses cross-examined upon that point.   The objection came too late after permitting similar testimony to be admitted without objection.   Grocer Co. v. Smith, 74 Mo. App. 419.   (3) Deceased did not personally pay his assessment on December 1, 1899.   Defendant contends this operated as a forfeiture of his certificate.   Ins. Co. v. Norton, 96 U. S. 234.   Bedwell says he reported deceased suspended on December 2nd, but this report was not put in evidence.   At the first regular meeting of the local camp a committee was appointed to attend to Smith.   The lodge then had notice of his condition, and under the custom established of receiving assessments long after due it was then the duty of the camp to pay deceased's assessments whether it had other notice or not.   McMahan v. Maccabees, 151 Mo. 522; James v. Life Ass'n, 148 Mo. 1.   No action was taken towards suspending Smith.   There is nothing to show he was suspended, except the statement of the clerk, Bedwell.   He did not become suspended by reason of his not paying his assessment on December 1, 1899.   Puhr v. Grand Lodge, 77 Mo. App. 47; Lewis v. Benefit Ass'n, 77 Mo. App.586. (4)   The notice sent the clerk of defendant at the instance of deceased, on November 27, 1899, was a sub-

stantial compliance with the laws of defendant, and was sufficient. Connelly v. Ben. Soc., 43 Mo. App. 283. This notice sufficiently informed the clerk of Smith's sickness and his inability to pay. This was all the law required. (5) The court did not err in giving instructions 2 and 3. Complaint is made on the ground that these instructions required the jury to find that the notice informed Bedwell of Smith's disability to pay his dues. The notice in effect stated that he was unable to pay them. Bedwell was requested therein to "fix up his dues in the lodge." If he had been able to pay he would not have made such a request.

BURGESS, J.—Defendant is a fraternal beneficiary association, incorporated under the laws of the State of Nebraska, issues certificates in the nature of life insurance policies on the lives of its members, and is authorized to transact business as such association in this State.

There was a local camp of defendant order at the village of Gooch Mill, in Cooper county, Missouri. One J. E. Smith was a member of said camp, and held a beneficiary certificate of defendant, by the terms of which, upon the death of said member while in good standing in defendant order, the plaintiffs in this suit were entitled to receive an amount not to exceed the sum of two thousand dollars, based upon the proceeds of one assessment of all members of defendant order. Smith died on January 6, 1900. His beneficiaries instituted this suit for recovery of the amount specified in said certificate.

The suit is brought upon the theory that the deceased at the date of his death was a member in good standing of defendant order, and that he had paid all dues and assessments levied against him and that his certificate was in full force and effect.

By its answer defendant denied the good standing of the deceased; denied that he had paid assessments

and dues as required, and affirmatively averred that the deceased failed to make the payment of assessments and dues due from him and payable to the clerk of the local camp on or before the first day of December, 1899. And, that, "at the time of the death of said Smith, he had not paid the said assessments and dues, and that at the date of his death said Smith was and had been suspended from said order and all rights and benefits under and by virtue of his beneficiary certificate, and his membership and been and was absolutely forfeited and said beneficiary certificate was null and void, and the plaintiffs had no rights thereunder."

To the answer plaintiffs filed a reply in which it is stated that deceased [became sick and unconscious, and that on the second day of December, 1899, while in that condition, he was suspended by the local camp; that, prior to his suspension, and while sick, he had served said camp with notice as provided by the by-laws and constitution of defendant of such sickness, and that it thereupon became and was the duty of said local camp to pay his assessments and dues, and that if it failed to do so it was not the fault of said deceased, and that defendant is estopped from denying that said dues were not paid].

Defendant filed a motion to strike out that part of the reply included in brackets, upon the ground that it constituted a departure from the cause of action declared upon in the petition.

This motion was overruled and defendant excepted.

At the trial, the application of deceased for membership in defendant order, together with the beneficiary certificate, and such sections of the constitution and by-laws of defendant order as bear upon the issues involved, were read in evidence.

By a stipulation read in evidence on behalf of defendant, it was admitted that in the month of October defendant levied an assessment against all members,

known as No. 108, and that the same was due and pay-able by each and every of such members during the month of November, 1899, and on or before December 1, 1899. That said assessment was regular in every respect and that under it there was due from said de-ceased upon the certificate named in plaintiff's petition the sum of one dollar; that there was due from his emer-gency fund, dues in the sum of ten cents, and camp dues in the sum of fifteen cents, and "that said deceased failed and neglected to pay any and all of said amounts on or before December 1, 1899."

It is further admitted that the amounts so due were never thereafter paid and that said Smith also failed to pay assessment No. 109, levied upon all members of defendant order, in good standing, and due and payable on the first day of January, 1900.

Plaintiffs introduced testimony tending to show that on the 27th day of November, 1899, C. E. Smith, a brother of the deceased, wrote to B. F. Bedwell, the clerk of the local camp of defendant order, the follow-ing note:

"Gooch Mill, Mo., Nov. 27, 1899.
"Mr. B. F. Bedwell,

"Dear Sir: I am requested to notify you that my brother Jasper is sick, and I wish you would see how his standing in the lodge is; fix his dues up all O. K., and I will settle with you.

"Yours respectfully,
"C. E. SMITH."

And that he inclosed the same in an envelope which he stamped and directed to the said Bedwell, at Gooch Mill, and then placed same in the postoffice at that place.

Defendant objected to the reading of said notice in evidence for the reason that it was wholly insufficient as a notice under the constitution and by-laws of de-fendant order, and for the further reason that the mere depositing of the letter in the postoffice was not sufficient.

These objections the court overruled and defendant excepted.

Over the objections of defendant, plaintiffs were permitted to introduce evidence tending to show that the said deceased was delirious and unconscious during the greater part of the time of his last illness. To which ruling of the court, defendant also excepted.

- Lottie Smith, widow of the deceased, was a witness on behalf of defendant, and stated, in substance, that her husband was first taken sick on Tuesday before Thanksgiving, in November, 1899. Tuesday before Thanksgiving was the 28th day of November.

She testified further that on Monday, the day before, which was on November 27th, her husband was at Boonville. This was the day on which C. E. Smith says he wrote and mailed the letter to Bedwell.

She also stated that C. E. Smith did not call to see his brother until more than a week after he became sick.

Dr. Wilson, who was a witness on behalf of plaintiffs, testified that he was first called to visit deceased on November 29th.

B. F. Bedwell, who was a witness on behalf of the defendant, testified that he was clerk of the local camp of defendant order that he resided within four or five miles of the town of Gooch Mill, which was his postoffice, but that he never received the letter alleged to have been mailed to him November 27, 1899, until the first day of February, 1901, when it came to him inclosed in another envelope, bearing the postmark of the Boonville, Missouri, postoffice, accompanied by an anonymous note written on a scrap of brown paper, saying: "I found this in the road between Gooch Mill and Overton." Witness further testified that he had never heard anything about a written notice until he received said paper on Friday before the day of trial.

He also testified that on the 27th day of November, 1899, the correct name and postmark of the postoffice at Gooch Mill was "Gooch Mills." That the name of

the postoffice and the stamp was changed about the 1st day of July, 1900, to "Gooch Mill."

That the envelope which purported to have been mailed to him on the 27th day of November, 1899, and to inclose the notice hereinbefore mentioned, bore the stamp of "Gooch Mill."

The envelope was also introduced in evidence and the postmark thereon was unmistakably "Gooch Mill."

He further testified that thinking it strange a letter would be mailed on the 27th of November, 1899, and not received until the 1st of February, 1901, he compared the postmark on a number of old envelopes which he had and which passed through the postoffice at Gooch Mills, immediately before and after the said 27th day of November, 1899. A number of these envelopes bearing the postal stamp were introduced in evidence by defendant.

With respect to his course of dealing in accepting payment of assessments and dues from members of the camp after they became due on the first day of the month, said witness testified that he had until the 5th of the month in which to make his report to the Omaha office; and that if a member came before him in good health before the forwarding of his reports in any month, and paid his assessments and dues, it was his custom to accept payment and to report such member in good standing. That the members of the lodge knew that if they came before him in good health after the first of the month and before the forwarding of his reports for that month, he (Bedwell) would receive their dues and report them in good standing.

Evidence on behalf of plaintiffs tending to show that, on the 16th day of December, 1899, there was a discussion among the members at a meeting of the local camp, of the illness of the said Jasper Smith, was admitted over the objections of the defendant, and defendant excepted.

At the close of all the evidence defendant asked a

peremptory instruction to the effect that under all the evidence plaintiffs could not recover, and the verdict of the jury must be for the defendant. This instruction was refused by the court and defendant duly excepted at the time.

The court then gave to the jury seven instructions. To the giving of those numbered 2, 3 and 4 defendant, by counsel, duly excepted at the time.

Instructions numbered 2 and 3 are as follows:

"2.   If the jury find that the said J. E. Smith, now deceased, had paid his dues and assessments to defendant, and was in good standing up to and including the first day of December, 1899, and that on said date dues and an assessment were due defendant from said Smith, and that on or prior to said date, said Smith became sick and unable to pay said assessment and dues, on the first day of December, 1899, and that on or prior to said date he notified in writing the clerk of the defendant's local camp at Gooch Mills of the said disability, then it was the duty of said local camp to pay said assessment and dues.   And in determining whether said notice was given to the clerk of said camp, if you find that B. F. Bedwell was the clerk of said camp, and that he was in the habit of receiving his mail at the post-office of Gooch Mills, Missouri, and that on or before the first day of December, 1899, said Smith caused a notice in writing, stating his condition and inability to pay said assessment, to be properly addressed, stamped and placed in the postoffice for said Bedwell, these are circumstances which may be taken into consideration in determining whether such notice was received by said Bedwell, unless said inference is overthrown by the other testimony.

"3.   If the jury find that Smith, on or prior to the first day of December, 1899, was sick or disabled, and while in that condition was unable to pay his assessment and dues to said defendant order; that he caused

notice in writing to be given to the clerk of the local camp at said Gooch Mills, Missouri, as stated in the foregoing instruction numbered 2, then the clerk of said camp had no right to report said Smith suspended for the month of December, 1899, and if defendant order did so suspend said Smith under these circumstances, and refuse to reinstate him, such facts constitute no defense in this case, and if you find that said Smith was suspended by the defendant under such circumstances, and while so suspended said Smith died, the defendant is liable to plaintiff for the amount specified in said beneficiary certificate, and the jury will so find.''

The jury returned a verdict for plaintiff in the sum of $2,063.33 1-3, upon which judgment was rendered.

Upon a poll of the jury it was found that only nine of their number had agreed upon the verdict.

In due time defendant filed motion for new trial, which was overruled, and defendant granted an appeal to this court.

Thereafter, more than four days after final judgment, but during the same term of court, defendant filed its motion, supported by affidavits, to set aside the order overruling its motion for a new trial and to reinstate the same, upon the ground of newly-discovered evidence.

This motion was also overruled and defendant excepted.

It is insisted by defendant that, as the petition alleged that the deceased was in good standing with the order at the time of his demise, and in the reply to the answer of defendant that he stood suspended, these allegations are inconsistent and irreconcilable, and the new matter in the reply constituted a departure from the cause of action declared upon in the petition, and, therefore, defendant's motion to strike out should have been sustained.

The answer among other things by way of defense alleged that:

"There was duly and legally levied by the proper officers of defendant in conformity with the constitution and laws of defendant, upon all of the members of the association, one assessment for the month of November, 1899; and by the constitution and laws of said order, and by the terms of his said agreement so as aforesaid fully set forth, it became and was the duty of said J. E. Smith to pay to the clerk of said Gooch Mills camp on or before the first day of December, 1899, the amount of said assessment No. 108, charged against his certificate, to-wit, the sum of one dollar, and the monthly camp dues for the month of November, 1899, being the sum of $——, and the sum of ten cents, being the emergency fund dues above mentioned, yet said J. E. Smith failed and neglected on or before the said 1st day of December, 1899, to pay to the clerk of said camp the said several sums above mentioned, in the manner provided by the constitution and laws of said order, and by reason thereof, said J. E. Smith became and was, on the 1st day of December, 1899, suspended from said order and his beneficiary certificate became and was wholly null and void."

It is manifest from the pleadings that the suspension of deceased was first raised by the answer, and in the reply thereto it is alleged that deceased was in fact suspended as therein alleged, and in explanation of such suspension and why it should not be a valid defense to this action, the facts and circumstances connected with it and which brought it about, are set forth in the reply. It was, therefore, no departure from the cause of action declared upon in the petition, and the motion to strike out was properly overruled.

A point is made upon the action of the court in admitting evidence tending to show that deceased was delirious and unconscious during his last sickness, defendant contending that his condition was no legal excuse for the non-payment of dues and assessments, imposed upon deceased as a member of the order.

Smith v. Woodmen of the World.

It was stipulated between the parties that in the month of October, 1899, the defendant by its proper officers and in accordance with its constitution and laws, duly and legally levied upon all the members of defendant association in good standing after November 1st, one beneficiary fund assessment; which said assessment was designated and known as assessment No. 108, and was due and payable by each and every of said members during the month of November, 1899, and on or before December 1, 1899. That said assessment was duly and legally promulgated, notices of the same sent to the clerks of all the camps of defendant in the manner and form as by its constitution provided; that the amount of said assessment due from deceased, J. E. Smith, upon the certificate mentioned in plaintiff's petition and payable on or before December 1, 1899, was the sum of one dollar. That the amount of emergency fund dues provided by the constitution and laws of defendant, due and payable from said Smith during the month of November, being on or before the first day of December, was the sum of ten cents. That the sovereign camp general fund dues due and payable from the said deceased during the month of November and on or before the first day of December was the sum of fifteen cents. That the camp general fund dues due and payable by said deceased for the said month of November and on or before the first day of December, was the sum of — cents; that said deceased failed and neglected to pay any and all of said amounts on or before December 1, 1899. That there had been levied for the month of October an assessment in like amounts as that for November and the amount of emergency fund dues, sovereign camp general fund dues and camp dues in like amount were due and payable from said deceased on or before the first day of November, that said deceased did pay all of said amounts and never thereafter was there anything paid by him or for him by any person to the defendant or its officers.

By the constitution and by-laws of the order all certificates of insurance issued by it become null and void upon the failure of the assured to pay to the clerk of the camp, on or before the first day of each month, dues and assessments levied against him, and for failure to do so he stands suspended and is not entitled to any benefits of the order.

But plaintiffs say that defendant ought not to be heard to complain in this court of the ruling of the trial court in this regard because the first objection made to this character of testimony was to the testimony of the witness Charles E. Smith, when two witnesses had previously given similar testimony without objection by defendant, and cross-examined by it with respect to the same matter. Plaintiffs rely upon the case of Grocery Co. v. Smith, 74 Mo. App. 419, as sustaining their positions. In that case it was said:

"Nor do we think any harmful error was committed by the court's permitting a witness to answer a question as to the value of the goods attached, since the same evidence had gone in without objection at an earlier stage of the trial. Conceding that, as an original proposition, such evidence was improper, it was not a substantial error materially affecting the merits of the controversy in the circumstances of this case."

It thus appears that the court thought that the ruling of the trial court was erroneous, but it refused to reverse the judgment upon the ground that the error was not a substantial one affecting the merits of the controversy in the circumstances of the case. And, while we think the judgment in the case at bar should not be reversed, because of the ruling of the court under the circumstances of the case, we are unprepared to give assent to the proposition that, because a party to a suit sits by and without objection permits a witness introduced by an adverse party to testify to matters which are inadmissible in evidence, and cross-examines him

with respect to such matters, he is thereby estopped from thereafter in the same case objecting to the same kind of evidence when offered.

While plaintiffs admit that the assured did not pay his assessment on December 1, 1899, which evidently operated a forfeiture of his policy, notwithstanding he was delirious and unconscious when it became due (2 Beach on Insurance, sec. 981; Carpenter v. Life Assn., 68 Iowa 453; Thompson v. Ins. Co., 104 U. S. 252), unless its payment was waived by the order, or there was some good and lawful excuse for not paying it, the assured was suspended from the time default in the payment was made.

The constitution and by-laws of the order expressly provide that if the admission fees, dues or beneficiary fund assessment levied against the person named in the certificate shall not be paid to the clerk of his camp, as required by the constitution and laws of the order, the certificate shall be null and void and continue so until payment is made in accordance therewith. But plaintiffs contend that notwithstanding these provisions the assured did not become suspended by reason of his failure to pay his assessment on the first day of December, 1899, but in order to that end some action must have been taken by the board in that regard, and cites Puhr v. Grand Lodge, 77 Mo. App. 47, as supporting this contention; but the constitution and by laws of the order in that case expressly provided that members who did not pay their assessments at the legal time, should be *notified by the grand secretary or accountant of the lodge,* of the date of the lodge session, that in case they did not pay their assessments in arrears, in the course of the next following month, they would at the last meeting in that month, be stricken from the membership list of the mortuary fund, while no such provision is contained in the charter of defendant.

This case does not, therefore, sustain plaintiff's contention.

Lewis v. Benefit Assn., 77 Mo. App. 586, is also relied upon by defendant, but that case is bottomed upon the case of Puhr v. Grand Lodge, supra, and for the same reason is not in point, in the case in hand.

On the other hand, it was held in Borgraefe v. Knights of Honor, 22 Mo. App. 127, that under a law of a benevolent society, which makes the non-payment of assessment for a given period after notice operate as a suspension *ipso facto* of the delinquent member, it is not necessary that the suspension should be judicially determined by any judicatory act of the order. The same rule is announced in Hogins v. Supreme Council, 76 Cal. 109.

Nor can such certificate be renewed after the death of the assured in case the constitution and by-laws of the association suspend the beneficiary certificate *ipso facto,* by the non-payment of the assessment. [Harvey v. Grand Lodge, 50 Mo. App. 472.]

Another insistence by plaintiffs is that Bedwell, who was clerk of the camp for eight years, had by his course of dealing established a custom of receiving from the members of the order their dues and assessments long after the time required by the law of the order, and by reason thereof induced the assured to believe that he was not required to pay his assessment and dues on the first day of the month, and in consequence thereof waived the forfeiture. Bedwell testified in substance, that he reported deceased suspended on the 2d of December, 1899. That if after the first day of the month and before he had forwarded his reports for that particular month, a member came before him and tendered payment while in good health, he would accept payment and report him in good standing. Section 115 of defendant's by-laws expressly confers authority upon the clerk to accept dues and assessments when so tendered by a member while in good health.

There was no waiver, therefore, of any condition or requirement of defendant's constitution and by-laws or

of the contract of the deceased, through any act of the clerk of the local camp.    The acceptance by him of assessments under the circumstances, was compliance with and not a modification or waiver of defendant's law. This being true, it is unnecessary to cite authorities showing that the clerk, under the constitution and by-laws of defendant, was without power or authority to bind the company, or to waive any provision of its law by a course of conduct in accepting the payments of assessments of delinquent members.

Plaintiffs seek to avoid the fact of a forfeiture for non-payment by showing what they claim to be a compliance with section 126 of defendant's by-laws, entitled "Indigent Sick Members," by which it is provided in effect that if a member in good standing shall become sick and, while in that condition, shall be unable to pay his dues and assessments, he shall not be suspended, but it shall be the duty of the local camp to pay them, provided, *he shall* notify the clerk of his camp, in writing, of said disability each month before he becomes delinquent.

The sufficiency of the notice in this regard is challenged upon the ground that it is wholly insufficient to comply with defendant's by-law, in that, there is nothing upon the face of it which indicates that the deceased had authorized or had any knowledge of it.    It is true that the by-laws provide that if *he* (the assured) shall *notify* the clerk of his camp in writing of his disability to pay his assessments each month before he becomes delinquent, the camp will pay them for him, and the notice in question is signed by his brother C. E. Smith. We are not, however, inclined to place upon it the strict construction contended for by defendant, but being in the interest of the assured, we think any person knowing the facts may give the notice, and sign his own name to it; otherwise if a member of the order should be so unfortunate as to become unable by sickness or disease to give such notice under his own signature or to direct

it to be done, he would forfeit his policy, which we are satisfied was never contemplated or intended by the order, but that any written notice calling the attention of the camp to the condition of the assured and his inability to pay, no matter by whom given, is all that is required. Moreover, the notice says, "My brother Jasper is sick, and I am requested to so notify you," and then requests the clerk to see how his standing in the lodge is, and to fix his dues up. The inference to be drawn from the language in which the notice is couched is, that the request mentioned therein was by the assured. But the notice nowhere says that the assured, by reason of sickness or disability, was unable to pay his assessment and dues, and in this respect does not comply with the by-laws.

It was only under these conditions that the camp had the authority to draw an order for a sufficient sum each month to keep the assured in good standing during his illness, but in no case could such an order be drawn for the benefit of any member who was delinquent. The notice was, we think, insufficient.

From what has been said it is immaterial whether the clerk of the camp received the notice or not, and, therefore, unnecessary to pass upon that question.

Instruction numbered 2 given by the court is erroneous in that it assumes that the assured became sick and unable to pay his assessment and dues on the first day of December, 1899, and that on or prior to said date he notified in writing the clerk of the defendant's local camp at Gooch Mills of the said disability, while there is nothing said in the notice with respect to, or indicative of, the inability of the assured to pay. It is erroneous for the reason that it submits to the jury the construction of a written instrument, to-wit, the notice, which was for the court and not the jury. [Comfort v. Ballingal, 134 Mo. 281, and authorities cited.]

Moreover, it is misleading and comments on the evidence in that it calls the attention of the jury to

specific facts in evidence and then tells them that "these are circumstances which may be taken into consideration whether such notice was received by said Bedwell, and they may from said facts, if they so find, infer that the letter was received by the said Bedwell, unless said. inference is overthrown by other testimony." [Kaiser v. Insurance Co., 7 Mo. App. 579; McFadin v. Catron, 120 Mo. 252.]

There is no merit in the point made in the motion for new trial, that the joint and concurrent resolution of the Fortieth General Assembly of the State of Missouri, submitting for adoption to the qualified voters of the State an amendment of section 28 of article 11 of the Constitution of the State of Missouri, providing that in the trial by jury of all civil cases in courts of record, three-fourths of the members of the jury concurring may render a verdict, was not legally adopted and has not become a part of the Constitution of the State. [Gabbert v. Railroad, 171 Mo. 84.]

There was no error committed in overruling the motion to set aside the order overruling defendant's motion for new trial and to reinstate the same.

For these intimations the judgment is reversed, and the cause remanded.

All of this Division concur.