LILLIE P. GARRETSON v. THE EQUITABLE MUTUAL LIFE
AND ENDOWMENT ASSOCIATION; Appellant.

**Mutual Life Insurance:** WAIVER. A society agrees to reinstate a member for her note, five dollars in cash, and on receipt of a satisfactory health certificate. The note, a draft for five dollars and a certificate were furnished. The latter was refused and a re-examination demanded. This, the society claims, was not had, through the fault of the member. Later, the member proposed two settlements which were declined. The note and draft were retained. The latter was cashed by mistake and no attempt to collect the note was ever made, no assessment notices were afterward sent or assessments paid. *Held*, the furnishing of a satisfactory health certificate was not waived.

CONSTRUCTION OF POLICY. The certificate made payment of annual dues, when due, essential. The by-laws required a thirty day notice of the annual dues before they should become due. *Held*, without such notice, nonpayment would not avoid the certificate. The words "indebtedness of a member" construed not to refer to annual dues.

OFFICERS: DELEGATION OF POWERS. Where the by-laws require assessments to be levied by the board of directors, the board can not delegate such powers to officers of the society.

*Appeal from Blackhawk District Court.*—HON. J. L.
HUSTED, Judge.

WEDNESDAY, JANUARY 23, 1895.

Suit in equity to compel the defendant, a mutual life insurance company, to levy an assessment upon its members for the purpose of paying plaintiff the amount of a certificate, in which she is beneficiary upon the life of one Flora Garretson. There was a trial to the court, which resulted in an order directing the company to make the assessment, and defendant appeals.—*Reversed.*

*J. J. Tolerton* for appellant.

*Boies, Couch & Boies* for appellee.

Deemer, J.—On the fifth day of September, 1884, one Flora Garretson became a member of the defendant company, and received a certificate of membership therein, whereby defendant agreed to pay Lillie P. Garretson the net proceeds of one assessment upon all the members of the company, not exceeding the sum of two thousand five hundred dollars, upon the death of Flora Garretson, provided such death occurred prior to the fifth of September, 1894, and satisfactory proofs thereof were furnished the home office on blanks to be furnished by the association. The insured died on or about June 21, 1891, and plaintiff requested of defendant company that it send her blanks, upon which to make proofs of death; but defendant refused to send them, and denied all liability to the plaintiff on the certificate. Plaintiff then brought this action to compel defendant to make an assessment on its members. The defendant answered, alleging that the membership of the deceased was forfeited—First, for nonpayment of assessments about March 15, 1886; and, second, for nonpayment of annual dues on the first of April in each year, from 1886 to 1891, inclusive. The plaintiff replied: First. Denying each of the forfeitures alleged. Second. Alleging a waiver of the forfeitures for nonpayment of assessments seventeen and eighteen (being the assessments referred to in defendant's answer), and a waiver of the forfeiture for nonpayment of annual dues in April, 1886, by reason of the fact that defendant demanded from Flora Garretson and from plaintiff the amount of an assessment No. twenty-one levied on the members of the association in June, 1886; the amount in whole or in part of which was remitted

by plaintiff about August 11, 1886, and by defendant appropriated to its own use. Third. Alleging a waiver of the forfeitures for nonpayment of assessments Nos. 17 and 18, and for nonpayment of annual dues in 1886, by reason of the fact that defendant in August, 1886, accepted plaintiff's note in full settlement and payment thereof. Fourth. Alleging that before the obligation of insured to pay annual dues for any of the years 1887 to 1891, inclusive, matured, the defendant declared and asserted that the policy in suit had become forfeited and void by reason of nonpayment of assessments seventeen and eighteen, which assertions were not afterward withdrawn; by reason of which fact defendant waived the right to declare a forfeiture of said contract for any failure of the insured to pay or tender payment of annual dues for any said years. The undisputed testimony shows that the insured was reinstated in the defendant company on January 5, 1886, and was on that date a member of the defendant company in good standing; that some time in the month of February, 1886, the defendant, through its secretary, made two assessments, Nos. seventeen and eighteen, and gave notice thereof to plaintiff. These assessments were not paid, except by the giving of a note hereinafter referred to. The insured did not pay the annual dues to the company on the first of April, 1886, or in any of the succeeding years, up until the time of her death, unless it be held that she paid the dues for the year 1886 by the note before referred to. The certificate of membership issued to the insured, among other things, provides "that, in consideration of the application for this certificate,    *    *    *    the further consideration of $12,    *    *    *    and of the annual payment of $5 to be made at the home office of the association on the first day of April in each year, and the payment within thirty days, at said home office,

of all death and endowment assessments legally levied, the Equitable Mutual Life & Endowment Association executes this certificate of membership, and constitutes Flora Garretson   *   *   *   member of said association, subject to the following conditions and provisions of its by-laws." These stipulations provided, in substance, that the certificate should be void if any death or endowment assessments are not received at the home office within thirty days from date of notice thereof, or if the annual payment is not made on or before the date due, except in case of reinstatement, as provided by the by-laws; that a printed or written notice mailed to the address of the member, as stated in the application or as changed by request of the member, shall be deemed legal notice. They further contain the following: "Any indebtedness of a member to the association, not paid when due, shall at the option of the association, forfeit the membership.   *   *   *" The articles of incorporation provide that the business of the association shall be under the management of a board of directors, consisting of not less than seven and not more than thirteen members; and further provide that five shall constitute a quorum, and that the board shall have authority to appoint such agents and servants as may be required to transact the business of the association; and they are given power to make by-laws for the regulation of the association, and the management of its affairs and business, not inconsistent with the articles of incorporation. The by-laws provide, in substance, that upon the death of any member each other member, within thirty days after a notice thereof shall have been mailed to his postoffice address, shall pay, as a mortuary and endowment assessment, such sum as may be *assessed against him by the board of directors,* not exceeding certain specific amounts, which are graded

according to age.    Articles twelve, sixteen and seventeen are as follows:

"Art. 12.    The board of directors shall assess each member, upon proof of death of any member, the full amount of the assessment provided in article No. 2.    After the number of members is large enough to raise more than the full sum of two thousand five hundred dollars by a full assessment for each death, the assessments shall be reduced as much as shall be consistent with suitable provisions for death losses and endowments, as herein provided."

"Art. 16.    It shall be the duty of the secretary, immediately on receipt of the proof of death of any member to notify each member, by mail, of such death loss, and of the amount of such member's assessment, and when the same must be paid; and he shall give a like notice in regard to the annual dues thirty days before the same become due.

"Art. 17.    A failure on the part of any member to pay any assessment for a death loss, or his annual dues, within thirty days from the date of mailing the notice mentioned in article 16 hereof, shall cause his certificate of membership to become forfeited; but such member shall be entitled to be reinstated upon payment, within sixty days after such forfeiture, of all sums due the association, and furnishing the association, on its blanks furnished for that purpose, a physician's certificate of good health, approved by the medical director."

Article twenty-six provides for meetings of the board of directors on the first Tuesdays of January, March, May, July, September, and November of each year, and for such special meetings as may be called by the president and secretary by notice to all directors, by mail.

The evidence shows that assessments Nos. seventeen and eighteen, for nonpayment of which forfeiture is said to have occurred, were levied by the president and secretary of the defendant, and not by the board of directors, except as the board authorized these officers to levy assessments by a resolution adopted by the board authorizing said officers to pass upon further proofs of death, and approve or reject the same, and, when approved, to make assessments therefor. On the part of the defendant company it is insisted that the board of directors had the right to delegate this power of making assessments, and that the assessments made by the president and secretary, under the resolution before quoted, are as valid and binding as if made by the board itself; while on the other hand, it is contended that forfeiture can only be declared for nonpayment of assessments when such assessments are made in strict conformity to the by-laws, and, if not so made, they are of no force, and failure to pay them does not forfeit the policy. The rule seems to be well established that "an assessment can only be valid when laid under the conditions stated in the charter. * * * The liability of a member of a mutual insurance company on his premium note left as a deposit as the basis of an assessment, should occasion arise, is not an absolute liability to pay the whole amount of his note, but it is conditional, and depends upon the contingency of the happening of losses and expenses to which he shall be liable to contribute, which have been duly ascertained by the directors, and which make necessary a resort to an assessment thereon. * * * The promise of the insured is to pay upon such conditions, and the existence of these conditions must be established affirmatively before a call for the payment of the note or any part thereof can be enforced. * * * And the

assessment must be made in strict accordance with the authority given. Even a more equitable mode than that provided cannot be adopted." May, Ins. section 557; Niblack Mut. Ben. Soc. sections 277, 278; Bacon Ben. Soc. section 377. In making an assessment upon its members, a society acts in a ministerial, not in a judicial, capacity. No presumption, therefore, arises in favor of the regularity or legality of its assessments. Every fact authorizing an assessment, and every act required of the society, must be performed before an assessment can be levied, which a member must pay, or forfeit his rights of membership. It may be stated, as a general proposition, that, when a society relies upon the failure of a member to pay an assessment as a forfeiture of his membership and the benefit thereof, it must show affirmatively that the assessment was made by the proper authority, for a proper purpose, in the manner indicated in the source from which it derives its power to make the assessment, and in accordance with the contract of insurance. Niblack Mut. Ben. Soc. section 280; *Underwood v. Iowa Legion of Honor*, 66 Iowa, 134, 23 N. W. Rep. 300. We are quite clearly of the opinion that the assessment in this case was illegal, irregular, and void, and that no forfeiture can be declared thereon.

II. The certificate of membership, however, provides for the payment of five dollars annual dues, to be made at the home office of the company on the first day of April of each year; and also provides that the certificate shall be void if the annual payment is not made on or before the day due. There is also another clause in the contract which provides, in substance, that, if any indebtedness of a member to the association is not paid when due, the membership shall be forfeited, at the option of the association. In construing the policy, we may say that we do not

regard this last provision as applying to the annual dues. Specific provision is made for the payment of dues in a certain amount, and at a fixed time and place; and construing the certificate with the by-laws, as we should, so that all parts may stand, we think it clear that the indebtedness last referred to does not apply to the annual dues. It is further insisted on behalf of appellee that the annual dues did not become payable until notice was given to the insured as provided in article sixteen of the by-laws above set out; and that, by the provisions of article seventeen, forfeiture for nonpayment of dues would not occur until thirty days after the mailing of the notice. We are inclined to the view that, as the certificate and by-laws are capable of two constructions, the one most favorable to the assured should be adopted, and that we should hold that the forfeiture would not occur until thirty days after the mailing of notice to the assured. *National Bank v. Insurance Co.,* 95 U. S. 673; *Moulor v. Insurance Co.,* 111 U. S. 335, 4 Sup. Ct. Rep. 466; *Baley v. Insurance Co.,* 80 N. Y. 21. It is also insisted, on behalf of appellee, that no notice was given the assured of the maturity of the dues, and therefore that no forfeiture occurred by reason of nonpayment thereof. It is true that the assured was not given this notice, but we are satisfied that such a notice was given to plaintiff, who was not only the beneficiary named in the policy, but the mother of the assured, and the person with whom the assured resided. In the application for the insurance, in answer to a question propounded, "To whom shall notices of assessment and dues be sent?" both plaintiff and assured said, "To Mrs. L. P. Garretson, Des Moines, Polk county, State of Iowa." The notice in this case was so sent, and we are satisfied that plaintiff received it. Neither plaintiff nor the assured made payment of the dues maturing in

April, 1886, within thirty days from the receipt of the notice, but, instead, made application for reinstatement under the provisions of the by-laws of the company. The defendant, after much negotiation, promised in August, 1886, to accept a note from plaintiff for twenty-seven dollars, and five dollars in cash, covering dues and assessments up to that time, and reinstate the assured, provided the insured furnished a satisfactory health certificate to the company. August 9, 1886, the company refused to accept the health certificate furnished because the physician who made it was not shown to have made an examination or to have been acquainted with the assured. Defendant then required a re-examination. Much correspondence was had between the parties with reference to this re-examination, and finally a physician was agreed upon to make the examination and certificate, but the parties could not agree as to who should pay the fee for this examination. The negotiations finally closed with a letter from plaintiff to defendant, November 1, 1886, and a reply thereto by the company of date November 5, 1886. In plaintiff's letter she made two propositions of settlement: First, that defendant should reinstate the assured at its own expense; or, second, that defendant pay plaintiff a pro rata proportion of the endowment claimed to have been earned by reason of the payment of dues and assessments for four and one-half years. Defendant declined to accept either proposition, claiming that plaintiff was wholly at fault, and had not furnished the health certificate essential to reinstatement. Defendant retained the note for twenty-seven dollars and one of its employes had the five dollars post-office order cashed in February, 1889. The twenty-seven dollar note included assessments seventeen, eighteen, nineteen, and twenty, and annual dues for 1885, and the five dollar draft was for assessment No. twenty-one.

The note was kept by the defendant in what is known as its "reinstatement drawer," and was never used or its collection attempted. The five dollar draft or post-office order was cashed, as we have said, in February, 1889, and one of the employes of the company entered the amount upon the books of the company from a ticket found in the "reinstatement drawer." The note remained in the drawer in which it had been placed until about the time of the commencement of this suit. The defendant, at the time of trial, offered to return the note and the amount of money forwarded to procure a reinstatement. The questions, then, arise, did defendant, by its conduct, waive the health certificate required and forfeiture for nonpayment of dues? and was plaintiff bound to tender the annual dues maturing during the years 1887 to 1891, inclusive, without notice having been sent her to pay the same? It has frequently been held that a waiver never occurs unless intended, or unless the act relied upon ought, in equity, to estop the party from denying it. And the doctrine of estoppel *in pais* is based upon a fraudulent purpose or fraudulent result. If the element of fraud is wanting, there is no estoppel, as where both parties were equally cognizant of the facts, and the declarations or silence of the one party produced no change in the conduct of the other. There must be deception and change of conduct in consequence. The mere act of receiving assessments or dues with knowledge of an existing forfeiture will not estop the society from setting up the forfeiture, unless the member, when he paid the assessments, had reason fairly to conclude from the acts and declarations of the association that the forfeiture had been or would be waived, or unless the payment was made in reliance upon the validity of the contract of insurance, induced by the acts, declarations, or silence of the society. Niblack Mut. Ben. Soc. sections 340,

342; *Servoss v. Society,* 67 Iowa, 86, 24 N. W. Rep. 604; *Bennecke v. Insurance Co.,* 105, U. S. 355; *Davidson v. Young,* 38 Ill. 152; *Insurance Co. v. Amerman* (Ill. Sup.) 10 N. E. Rep. 225; *Diehl v. Insurance Co.,* 58 Pa. St. 443; *Robertson v. Insurance Co.,* 88 N. Y. 541; *Jewett v. Insurance Co.,* 29 Iowa, 562; *Rockwell v. Insurance Co.,* 27 Wis. 372; *Crossman v. Association,* 143 Mass. 435, 9 N. E. Rep. 753; *Society v. Baldwin,* 86 Ill. 479; Bacon Mut. Ben. Soc. sections 423, 431; May, Ins. sections 505, 507. We will not attempt to review all the authorities in this state on the subject of waiver. It is not, as said in *Tobin v. Society,* 72 Iowa, 261, 33 N. W. Rep. 663, the intention of the insurer, but the effect upon the insured, which gives validity to the estoppel. See, also, *Bailey v. Association,* 71 Iowa, 689, 27 N. W. Rep. 770; *Viele v. Insurance Co.,* 26 Iowa, 55. In the case at bar it is quite evident that the defendant accepted the note and post-office order with the definite understanding, knowledge of which was conveyed to the assured, that the member would not be reinstated unless a sufficient health certificate was furnished, and this requirement was never waived, unless the mere retention of the note and the cashing of the order are held to constitute such waiver. We do not think it should be so held. Defendant never attempted to enforce the note, and it is apparent that the post-office order was cashed through mistake. The defendant did not intend to waive the health certificate, and plaintiff knew it. See *Garbrutt v. Association,* 84 Iowa, 293, 51 N. W. Rep. 148. The negotiations, as we have said, ended in November, 1886, with defendant insisting upon the plaintiff's procuring the health certificate at her own expense. Plaintiff refused to furnish it, but, on the contrary, made defendant propositions for a settlement, which defendant refused to accept. It is clear to our minds that the

plaintiff understood that her daughter was no longer a member of the company, because she made no attempt to ascertain if more assessments or dues were required of her; and the defendant considered the membership at an end, because it did not notify plaintiff of any further assessments, and never made any claim for dues.    Plaintiff was in no manner misled by the defendant's conduct, to her prejudice, and it does not seem to us that she is in position to now insist upon the assessments being made to pay her certificate, because the trouble all arose over her failure to furnish the health certificate.  Plaintiff at all times was aware that defendant was insisting on the health certificate, and that it did not intend to waive it.   Had defendant cashed the order and accepted the note, intending to waive the health certificate, it certainly would have insisted on plaintiff's remitting her subsequent assessments, and paying the dues called for by the certificate of membership.    This it did not do, and plaintiff well knew, from this circumstance alone, that defendant did not consider her daughter a member of the company.   It would be most unjust to allow plaintiff to recover, and have equal advantage with the other members of the society, when, as the evidence shows, she has paid neither assessments nor dues since the year 1886.    If plaintiff's daughter was a member of the company, she ought to have paid prior to her death, in dues and assessments, the sum of about one hundred and forty dollars.    We do not think we ought to hold that she was a member of the company during all this time, and that she did not pay her dues and assessments because of the fault of the defendant company.    For the reasons above pointed out, the judgment of the District Court is *reversed*.