BURCHARD et al., Respondents, v. WESTERN COM-
MERCIAL TRAVELERS ASSOCIATION, Appel-
lant.

Springfield Court of Appeals, December 6, 1909.

1. **INSURANCE: Mutual Benefit Association: Absence of Ritual-
istic Work, Etc., Does Not Make Old Line Company.** The
defendant was a mutual benefit life association doing business
on the assessment plan, but there was no pretense that it
had a lodge system with a ritualistic form of work and a
representative form of government as provided by sections 1408
and 1409, Revised Statutes of 1899, and amendments thereto;
yet a failure of the company to adopt the provisions of the said
sections did not make it an old line insurance company and it
is not subject to the statutes governing old line companies.

2. ————: ————: **By-Laws Binding On Members.** When a per-
son takes out a policy of insurance in a mutual benefit asso-
ciation and becomes a member of the association, he is bound
by its rules and the provisions of the charter and the by-laws
of the company, and he is "conclusively presumed to have knowl-
edge of them all," and the company is under no obligation to
give him special notice or information concerning them. It is
his duty to acquaint himself with the provisions.

3. ————: ————: **Forfeiture of Members Rights Not Favored.**
The law abhors a forfeiture and will release against one where
possible, and this rule applies to membership in insurance socie-
ties. Courts require a strict compliance with the course of
procedure prescribed to forfeit membership in such societies
and are astute to discover any departure which will enable
them to interfere and prevent such a forfeiture.

4. ————: ————: ————: **Failure to Pay Assessment: For-
feiture Ipso Facto.** When the by-laws of a mutual benefit
life association provide that a failure by a member to pay his
assessment on or before a certain day shall work *ipso facto*
a suspension and forfeiture of all rights under his certificate,
such provisions are valid and binding between the association
and the member. The language, however, must permit of no
other construction before the courts will hold that such a
failure *ipso facto* works a forfeiture.

5. ————: ————: ————: **Where Failure to Pay Does Not
Ipso Facto Work Forfeiture.** Where, under the terms of the
contract and provisions of the by-laws of a mutual benefit in-

surance company, the failure to pay an assessment within a time fixed does not *ipso facto* work a forfeiture of the rights and benefits, then the association must show, in order to establish a forfeiture, that every step necessary therefor has been taken with technical accuracy and completeness.

6. ———: ———: ———: **Irregular Suspension.** Where the by-laws of an insurance association provide for the board of directors suspending a member who is in arrears, some affirmative action must be taken by the board before a member can be suspended. Evidence in this case examined and held that though the act of the board was irregular and not a strict compliance with the by-laws, yet the irregularity was not so material as to make the suspension illegal, provided the assured had actually failed to pay the assessment for which he was suspended; but held further, that the defendant company did not show a failure on the part of the assured to pay said assessment and the suspension was consequently illegal.

7. ———: ———: ———: **Failure to Pay Assessment.** Where a forfeiture of an insurance policy is claimed as a justification for not paying it, the existence of the precise conditions, which, by the terms of the contract work its forfeiture, must be clearly shown. If such conditions be failure to pay an assessment, it must be shown that such an assessment was made by the persons and under the conditions and for the amount provided in the contract; and to authorize a forfeiture and suspension from membership in a mutual benefit insurance society, it is absolutely necessary that the assessment should have been made in strict accordance with the by-laws of the association.

8. ———: ———: ———: **Legal Assessment.** Where the by-laws of a mutual benefit life association provide that the board of directors at each monthly meeting shall levy an assessment upon each active member, and the board failed to make a record levying an assessment, but the secretary mailed notice to the members as if said assessment had been regularly levied by the board: *Held* that if the failure of the board to comply with the by-laws had in any manner changed the position of the assured in regard to paying his assessment the assessment would be held void, but as the by-laws of the association fixed the amount at a definite sum, payable at regular periods, and the assured did not refuse to pay the same on account of any omission of the board of directors. the assessment was legal.

9. ———: ———: ———: **Burden of Establishing Forfeiture.** The burden of establishing that the insured member of defendant association had forfeited his membership and all rights to the benefits sued for was on the defendant.

10. **CREDITOR AND DEBTOR: Application of Payment.** Where a creditor holds more than one claim against his debtor, the latter on making a payment, has a right to direct upon which debt it shall be credited, and it is only where no direction is given that the creditor can make the application. A creditor cannot divert a payment made by his debtor from the appropriation made by him upon mere equitable considerations that do not amount to an agreement between the parties.

11. ————: **Assessment: Remittance Must Be Applied as Directed.** Where money was sent to pay a certain assessment in an insurance society, the secretary of the association was not justified in diverting the remittance and applying it on the payment of an assessment other than the one authorized to be paid, and the board of directors of the association are not justified in suspending a member for failure to pay a certain assessment when the money sent to pay that assessment was wrongfully diverted by the secretary and applied to the payment of a former assessment.

Appeal from Pulaski Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Jones, Jones, Hocker & Davis* and *F. M. McDavid* for appellant.

(1) The assessment was valid. The constitution fixed the amount and date of the assessments, and the persons on whom it should be ordered. The directors had no discretion. The duty to order an assessment was purely ministerial and mechanical and could be delegated to the secretary. Insurance Co. v. Birnbaum, 116 Pa. St. 565; Benefit Assn. v. Robinson, 147 Ill. 138, 35 N. E. 168; Van Frank v. U. S. Ben. Assn., 158 Ill. 560; Miles v. Mutual Reserve Fund Life Assn., 108 Wis. 421, 84 N. W. 159; Insurance Co. v. Sanders, 36 N. H. 252; 10 Cyc. 771; Stevens v. Hill, 29 Me. 133; Bank v. Pehoon, 11 Mass. 288; Burnill v. Bank, 43 Mass. 163, 35 Am. Dec. 395; Hoyt v. Thompson, 19 N. Y. 207; 31 Cyc. 1428; 21 A. and Eng. Ency. Law, 978; Grinnell v. Buchanan, 1 Daly 538; Grady v. Insurance Co., 60 Mo. 116; Eld-

ridge v. Holway, 18 Ill. 445; Fleckner v. Bank, 8 Wheat. 362. (2) A by-law or resolution of the board of directors may be passed informally and may be inferred from circumstances; may be shown by custom, usage and method of doing business. Waln v. Bank, 8 S. & R. (Pa.) 73; Henry v. Jackson, 37 Vt. 431; Lockwood v. Bank, 9 R. I. 308, 11 Am. St. Rep. 253; Insurance Co. v. Sanders, 36 N. H. 252. (3) Plaintiff, as beneficiary, is estopped to claim the proceeds of the policy because of the failure of deceased to pay assessments and because of his failure to seek reinstatement after lapse. The policy was abandoned. Insurance Co. v. Phinney, 178 U. S. 327; Insurance Co. v. Allen, 178 U. S. 350; Jones v. Insurance Co. (Mich.), 28 Ins. Law. J. 826; Haydel v. Assn., 98 Fed. 200.

*Bland, Crites & Murphy* for respondents.

(1) The defendant association is not a fraternal, beneficiary association, but a mutual benefit insurance company doing business on the assessment plan. Western Travelers' Assn. v. Tennent, 128 Mo. App. 541; Elliott v. Des Moines Life Assn., 163 Mo. 132. (2) The assessments made by Godlove, the secretary, were invalid, and for that reason could not form a basis for the forfeiture of the certificate of membership. Purdy v. Bankers Life Assn., 101 Mo. App. 91; 2 Bacon's Benefit Society Life Assn. (3 Ed.), sec. 377, p. 939; Vance on Insurance, p. 238; Am. Mutual Aid Society v. Helburn, 85 Ky. 1, 7 Am. St. Rep. 571. (3) Even if the custom had been proven, it was binding on no one except such members as had knowledge of it and acquiesced in it, to-wit: the secretary and board of directors. Baer v. Glaser, 90 Mo. App. 289; Cotton Compress Company v. Stannard, 44 Mo. 82. Section 5 of article 5, requiring assessments to be levied by the board of directors, was a part and parcel of the contract of insurance, and for that reason the section could not

be altered or modified by a custom. Wolff v. Campbell, 110 Mo. 114; 172 Mo. 92; Keller v. Meyer, 74 Mo. App. 318. (4) Burchard, the deceased, did not fail to pay assessment numbered 101, for the non-payment of which it is claimed he was suspended. Godlove received and cashed the check, and was legally bound to apply the proceeds to the payment of assessment numbered 101. Gardner v. Kemper, 58 Mo. 570; Waterman v. Younger, 49 Mo. 415; Lime & Cement Co. v. Bank, 158 Mo. 272. (5) Section 13 of article 1 of the constitution is not self-enforcing. It should be read in connection with sections 5 and 10 of article 5 of the constitution and when so read, it is apparent that a member can only be suspended by the board of directors. Horn v. Catholic Knights of America, 95 Mo. App. 233; Brooks v. Insurance Co., 132 Ia. 377; Ostermann v. District Grand Lodge No. 4 (Cal.), 43 Pac. 415; McDonald v. Supreme Council, 78 Cal. 49; Warwick v. Supreme Conclave, 107 Ga. 115; Travelers' Assn. v. Schauss, 148 Ill. 304; Rogers v. Union Benevolent Society, 111 Ky. 598; Murphy v. The Independent Order, 77 Miss. 830; Lewis v. Western Fraternal Benefit Assn., 77 Mo. App. 586; Bange v. Supreme Council, 128 Mo. App. 461; Brotherhood of Railway Trainmen v. Bee, 108 S. W. 419; Sheu v. Grand Lodge, 17 Fed. 214; Insurance Co. v. Buckley, 88 Pa. St. 293; Knights of Columbus v. Burrows Beneficiary, 107 Va. 671. (6) There is no evidence in the record upon which to predicate the presumption that Burchard, the deceased, abandoned or intended to abandon the society. Scarritt v. Railroad, 148 Mo. 676; Savings & Loan Assn. v. Trust Co., 73 Mo. App. 161; Womeck v. Supreme Lodge Bohemian, 84 Mo. App. 185; Pidge v. Pidge, 44 Mass. 257; Stevens v. Mansfield, 11 Cal. 363; Breedlove v. Stump, 11 Tenn. 257; Landes v. Perkins, 12 Mo. 338; Hickman v. Link, 116 Mo. 123; Duffey v. Willis, 99 Mo. 132; 1 Cyc., p. 5.

GRAY, J.—On the 15th day of July, 1878, the appellant was incorporated under the laws of the State of Missouri, as a mutual benefit association, for the following purposes: "To obtain as its active and honorary members a large number of white male persons, (a) of good moral character, (b) of good health, (c) who are not under twenty-one nor over forty-five years of age, (d) who are traveling salesmen, (e) salesmen (or clerks in wholesale or manufacturing houses) or (f) buyers or salesmen for proprietors, copartners or corporations engaged in a legitimate mercantile manufacturing or commercial business, and who are proprietors, copartners, officers, directors or stockholders of corporations engaged in such business; (2) adopt, maintain and execute such plans as shall tend to the mutual benefit and protection of its members; (3) levy and collect assessments from its active members for such sums as may be necessary to provide a death loss fund for the sole purpose of the relief and aid of families, widows and orphans and other dependents of its deceased members, and (4) levy and collect from its members such sums as may be provided in its Constitution and By-Laws for the payment of its necessary expenses and the promotion of its objects."

There is no pretense that the defendant has a lodge system with a ritualistic form of work and a representative form of government, as provided by sections 1408 and 1409, Revised Statutes 1899, and amendments thereto, and therefore its powers and duties are not to be measured by those statutes. But the failure of the appellant company to adopt the provisions of said sections, does not make it an old line insurance company.

As said by Judge BLAND in 128 Mo. App. 541: "It is a mutual benefit association, doing business on the assessment plan and is confined in the issuance of certificates of insurance to the class of beneficiaries named in its charter." These observations are necessary in order to determine what statutes of this State apply to

the contracts of this association in disposing of the points in issue. If the association is an old line insurance company, then certain statutes of the State in regard to forfeiture of rights to benefits after payments have been made, would have to be taken into consideration. But the association being of the character heretofore stated, these statutes have no place in determining the issues involved.

On the 6th day of November, 1897, George A. Burchard, then of St. Louis, Missouri (whom we will hereinafter designate as the assured), became a member of the association and received from it a benefit certificate upon his life in the sum of four thousand dollars, payable at his death to his wife, Sarah A. Burchard. On the 30th day of July, 1904, the assured, for the purpose of changing the beneficiary from his wife to his children, Clarence A. Burchard and Blanche Burchard, surrendered his certificate and received from the defendant as a substitute therefor, the benefit certificate in suit.

The association had, at all times, a constitution and by-laws which were offered in evidence by the defendant. In 1899 or 1900, at an annual meeting of the association, the by-laws were amended, and among others, the following adopted:

"Section 5. The Board of Directors, at each regular monthly meeting, shall levy an assessment upon each active member as follows:

|  | Whole Certificate. | Half Certificate. |
|---|---|---|
| Those aged between 21 and under 26 years, | $2.75 | $1.40 |
| "    "    "    26 "    "    31 " | 3.50 | 1.75 |
| "    "    "    31 "    "    36 " | 4.00 | 2.00 |
| "    "    "    36 "    "    41 " | 4.75 | 2.40 |
| "    "    "    41 "    "    46 " | 6.00 | 3.00 |
| "    "    "    46 years and over, " | 7.00 | 3.50 |

All Active Members shall be Classified as follows:

| Those aged between 21 and 26 years, | 1st Class |
| " " " 26 " 31 " | 2nd " |
| " " " 31 " 36 " | 3rd " |
| " " " 36 " 41 " | 4th " |
| " " " 41 " 46 " | 5th " |
| " " 46 years and over, | 6th " |

"It is further provided, that when any member in Class 1 shall reach twenty-six years, he shall be transferred to Class 2, and be subject to the assessment as ordered for Class 2; and when any member of Class 2 reaches the age of thirty-one years, he shall be transferred to Class 3, and be subject to the assessments as ordered for Class 3; and when any member of Class 3 shall reach the age of thirty-six years, he shall be transferred to Class 4, and be subject to the assessment as ordered for Class 4; and when any member of Class 4 shall reach the age of forty-one years, he shall be transferred to Class 5, and be subject to the assessment as ordered for Class 5; and when any member of Class 5 shall reach the age of forty-six years, he shall be transferred to Class 6, and be subject to the assessment as ordered for Class 6. Age at transfer shall be computed from age at beginning of each fiscal year and transfer made at that time."

The evidence shows from the adoption of this by-law, until after the death of the assured, which occurred in October, 1907, the board of directors did not, at the monthly meetings, make a record levying an assessment upon the active members, as provided in that by-law. But the secretary mailed monthly, to the given address of the members, a notice in the form hereinafter set out in this opinion. The assured paid to the association ninety-eight assessments, of which he had notice in the manner above indicated.

In about the year 1905, the assured was in the employ as traveling salesman, of Bettman, Kleinhauser & Company, wholesale clothers, located at 1005 Washing-

ton Avenue, St. Louis. Sometime in 1905, notice was given to the association to send assessment notices to the address of this firm, and this was done until June, 1907. On April 15, 1907, the following notice was sent to the above address:

"ASSESSMENT NO. 100.

Office of

WESTERN COMMERCIAL TRAVELERS' ASSOC.

610 Mermod-Jaccard Bldg.

ST. LOUIS, MO., April 15, 1907.

"By order of the board of directors this notice of assessment No. 100 is sent to all members. Payment must be made before May 15, 1907.

"Amount of your assessment is $6.00—100."

In this statement was included a list of the deaths of four members of the association, each having a certificate of $4,000.

As a part of the notice of assessment and attached to it was the following:

"Tear this off and send with remittance before May 15, 1907.

"This assessment expires May 15.

"Western Commercial Travelers' Association.

"St. Louis, Mo.................

"I enclose.................$6.00 in payment of assessment No. 100.

"Please mail my receipt to my permanent address, as given below.

"MR. G. A. BURCHARD,

1005 Washington Ave.,

St. Louis, Mo.

(Blue pencil)—"N. Bk. of C."

When this remittance was received by the secretary of the association, he put a blue pencil ring around the "$6.00" and erased the figures "100" and wrote "99" and retained the same, and mailed the following receipt:

"*Receipt No.* 1001.

Office of

WESTERN COMMERCIAL TRAVLERS' ASSOCIATION.

"ST. LOUIS, MO., 4—19—07.

"Received of G. A. Burchard, six..........dollars in payment of death loss ($6.00). Assessment No. 99, expiring April 15, 1907.

"G. GODLOVE,

"Sec. and Treas."

On May 15, 1907, the secretary sent to the said address, the following notice:

"ASSESSMENT NO. 101.

Office of

WESTERN COMMERCIAL TRAVELERS' ASSOC.

"St. Louis, May 15, 1907.

"By order of the board of directors, this notice of assessment, No. 101, is sent to all members. Payments must be made before June 15, 1907."

And containing a statement of the death of four members holding beneficiary certificates, amounting to $14,000. And to which notice was attached the following:

"Tear this off and send with remittance before June 15, 1907.

"This assessment expires June 15, 1907.

"I enclose......................for $6.00 in payment of assessment No. 101.

"Please mail receipt to my permanent address given below.

"Mr. G. A. BURCHARD,

"1005 Washington Ave.,

"St. Louis, Mo.

(Blue pencil)—"Nat. Bk. of C."

When this remittance of June 15, 1907, was received by the secretary, he drew the blue pencil mark around the "$6.00" erased the "101" and wrote below it the fig-

ures "100," retained the same and sent to 1005 Washington avenue, the following:

*"Receipt No.* 1014.

Office of

.WESTERN COMMERCIAL TRAVELERS' ASSOC.

"ST. LOUIS, June 4, 1907.

"Received of G. A. Burchard, six.......... dollars in payment of death loss assessment No. 100, expiring May 15, 1907.                    "G. GODLOVE,

"Sec. and Treas."

On the 2nd day of July, 1907, the secretary mailed to the assured the following notice:

"Western Commercial Travelers' Association.

"St. Louis, Mo., 7—2—07.

"Mr. G. A. Burchard,

"1005-7 Washington Ave.,

"St. Louis, Mo.

"Dear Sir: Notice for assessment No. 101 expiring June 15, was mailed to you May 15, and payment neglected. Prompt remittance is necessary to protect your insurance.

"Very truly,

*"Last notice."*                    "G. L. GODLOVE.

On the 13th day of August, 1907, Bettman, Kleinhauser & Company wrote the Association as follows:

"BETTMAN, KLEINHAUSER & Co.,

Wholesale Clothers, 1005-1007 Washington Av.

"ST. LOUIS, Mo., Aug. 13, '07.

"Western Com. Travelers' Assoc., City.

"Gentlemen: We herewith return you a letter addressed to us for Mr. G. A. Burchard. We wish to notify you that he is no longer in our employ. You can address him at Waynesville, Mo.

"Respectfully yours,

"BETTMAN, KLEINHAUSER & Co."

The explanation of the blue pencil marks and erasures are as follows: The secretary testified that the blue pencil mark was put around the "$6.00" to designate that the payment was made by check, and the erasures of the "100" and writing in "99," was due to the fact that the secretary claimed assessment 99 had not been paid, and he therefore erased "100" and wrote in the "99" to make the remittance as a payment of assessment 99; and when he received the remittance of June 15, in payment of assessment No. 101, he erased the "101" and wrote in "100," because he claimed that assessment 100 had not been paid.

The letter of July 2nd, was received by the wholesale clothing company, but not answered until Aug. 13, because a member of the firm, who had charge of such matters, had received a letter from Mr. Burchard in regard to some commissions he claimed, and this letter was so unsatisfactory to said member of the firm that he concluded not to have anything more to do with Mr. Burchard, but to wait until Clarence Burchard, who had taken the place of his father with the firm, came in from one of his trips. When this letter of August 13 was received by the secretary, from the wholesale clothing company, no attempt was ever made to notify Mr. Burchard at Waynesville, and no other communications were had between the insurance company and the wholesale clothing company or Mr. Burchard.

The assured quit the employ of the clothing company in April, 1907, and his son took his place and arranged with the company to pay his father's assessment, as had been done in the past.

Mr. Bettman, one of the members of the clothing firm, testified in behalf of plaintiff, that the assured, when he entered the employment of the company, made arrangements to have the company pay his assessments to the association, and this was done at all times after that. This witness also testified that he never received

a notice of an assessment from the association that he did not pay.

The appellant claims that notice of assessment 99 was sent to the clothing company, and that the company failed to remit until notice of 100 was sent in, and when it received that notice, it remitted for assessment 99, but using assessment blank 100. Mr. Bettman testified that not to his knowledge did anything of this kind occur, and that there might possibly have been some delay in making remittances, but as a rule the remittances were made promptly.

On August 9, 1907, the board of directors of the corporation held an adjourned meeting, and in its minutes appeared the following:

"Attached list of resignations and suspensions were ratified." This list contained fourteen names of members, giving their ages, dates of admission, number of certificate, amount of insurance, the class, and date suspended, showing that the assured resided in St. Louis, Mo., thirty-six years of age, admitted November 6, 1897, number of certificate 4199, amount $4,000, class $6.00, and suspended July 15, 1907, and that the last assessment paid by him was No. 100, paid June 4. The secretary testified that the memoranda in the book by him was not for the purpose of showing he had suspended Burchard, but simply as showing when, under the by-laws, his time would expire in which he could pay his assessment, and retain his membership, and when the board met on August 9, this time had expired, and he prepared the list and the board ratified it.

It thus appears from all the evidence in the case, if the assured failed to pay his assessments and keep his insurance in full force up to the time of his death, that it was not intentional, and that at the time of his death he had the right to believe, and did believe, that his policy was in full force.

This suit was commenced in the circuit court of Pulaski county by John R. Burchard, the guardian and

curator of the beneficiaries named in the certificate, and for the purpose of collecting the $4,000 which they would be entitled to if their father was a member of the order at the time of his death. The petition was in the usual form, and the answer specially denied that Burchard was in good standing at the time of his death; denied that he complied with the constitution and by-laws and regulations of the association, and setting up that he failed to pay assessment No. 101, payable on or before June 15, 1907, and on account thereof, he was suspended by the board of directors on the 9th day of August, 1907, and on account of his failure to pay said assessment, all his rights as a member were forfeited and lost. The answer further alleged that during the entire period of the membership of the assured, the constitution and by-laws of the association had been construed by the officers and members to mean that one assessment should be paid by each member on or before the 15th day of each month, and that no affirmative action on the part of said board of directors should be necessary to establish the validity of said monthly assessment, but that the notice of the secretary should constitute the levy of one monthly assessment payable as aforesaid; that said custom and by-laws were known to Burchard, as well as the other members of the association, and was construed by him to mean that he should pay an assessment, according to his age, on or before the 15th day of each month; that the assured relied upon said construction, and that the same had prevailed for such a length of time and was acquiesced in by the members and officers, until said custom and habit became a by-law of said defendant, and a part of its constitution.

The reply denied there was any such custom, or that the assured had any knowledge of it, or there had been such construction of the constitution and by-laws, as set forth in the answer, and further alleged that Burchard had paid each and every assessment provided by the by-laws and constitution of which notice had been

given by the secretary, and alleging that notice of assessment 101, which would be due and payable in June, was received by him and that he did pay in the manner provided by the laws of the association an amount equal to said assessment, and that no other notice of assessment was ever sent or received by him, and denied that on the 9th day of August, or at any other time, he was suspended by the board of directors, or that he had any knowledge thereof, or that he had ever acquiesced in the same, but alleged generally, that he died in good standing in the order.

There was a trial by court and judgment for the plaintiff. A number of instructions were asked by the defendant and refused, but it will not be necessary to notice them in detail, because the court, at the instance of the plaintiff, gave the following declaration of law:

"The court declares that under the law and the evidence in this case, that the plaintiffs are entitled to recover."

The purposes of the defendant organization, as set forth in its charter, are highly commendable. The evidence shows that the association is not organized for gain. No officers receive a salary save the secretary. Its membership consists of men who are giving part of their monthly incomes for the purpose of raising a fund to provide for certain blood relatives of their deceased members. It depends exclusively upon the prompt payment of the assessments made from time to time to satisfy the certificates of deceased members, and only by the prompt payment of these assessments at the time and in the manner provided in the by-laws, can it maintain its solvency and carry out the worthy purposes for which it was organized. The only way it has of enforcing payments of its assessments is by forfeiting insurance contracts and suspending defaulting members for non-payment. Without this power, these societies could not exist. Not only has such a society an inherent right to take all benefits from members, for non-payment of dues

and assessments, but from their nature and necessities, and from the decisions of nearly all appellate courts of the country, they have the right to provide in their by-laws that such non-payment within a specified time, shall work a forfeiture of all the member's rights of membership.

It is equally settled, that when a person takes out a policy in an organization of this kind, and the contract is complied with, he becomes a member of the society, and is bound by its rules and provisions of the charter and by the by-laws of the company, and he is "conclusively presumed to have knowledge of them all." The company is under no obligation to give him special notice or information concerning those provisions. It is his duty to acquaint himself with their provisions, and to know what they are and what is to be required of him to prevent a forfeiture of his rights. [Boyce v. Royal Circle, 99 Mo. App. 349.]

While the authorities are practically unanimous upon the above propositions, they are equally so in regard to forfeitures, and all agree that the law abhors a forfeiture and will release against it when possible, and this rule applies to certificates of membership issued by associations such as the defendant. [Roseberry v. American Benevolent Association, 121 S. W. 785, and cases there cited.] The authorities go so far as to say that courts require strict compliance with the course of procedure prescribed, and are astute to discover any departure which will enable them to interfere and prevent a forfeiture.

Under the issues, the plaintiffs are entitled to recover unless their father had, by his conduct, forfeited his rights to the benefits sued for. The burden of establishing the forfeiture is upon the defendant. [Miles v. Mutual Reserve Fund Life Assn., 85 N. W. 159; Mulroy v. Knights of Honor, 28 Mo. App. 463.]

The ground of forfeiture assigned is that G. A. Burchard failed to pay an assessment within the time fixed

by the by-laws of the association, and that he was suspended therefor in accordance with the provisions of said by-laws. When a forfeiture of an insurance policy is claimed as a justification for not paying it, the existence of the precise condition, which by the terms of the contract worked its termination must be clearly shown. If such condition be failure to pay an assessment upon the membership, it must be made to appear that such an assessment was made by the persons and under the conditions, and for the amount provided in the contract. [Seehorn v. Catholic Knights of America, 95 Mo. App. 233; Lewis v. Benefit Association, 77 Mo. App. 586; Miles v. Mutual Reserve Fund Life Association, 84 N. W. 159; Underwood v. The Iowa Legion of Honor, 66 Ia. 134.] And if, under the terms of the contract and provisions of the by-laws of the association, the failure to pay an assessment within the time fixed, does not *ipso facto* work a forfeiture of the rights to benefits, then the association must show, in order to establish a forfeiture, that every step necessary therefor has been taken with technical accuracy and completeness. [Lewis v. Benefit Association, supra, and authorities there cited; Bange v. Supreme Council, 128 Mo. App. 1. c. 471.]

It is claimed by the defendant that the assured failed to pay within the time specified, assessment 101, and that such failure *ipso facto* suspended him without any further action on the part of the association or any of its officers. It is true where the by-laws of an association such as the defendant, provide that a failure, by a member, to pay his assessment, on or before a certain day, shall work *ipso facto* a suspension and forfeiture of all right under his certificate, such provisions are valid and binding between the lodge and the member, and that the member is not entitled to notice or a hearing before suspension, and is absolutely deprived of all claims against the association. [Lavin v. The Grand Lodge A. O. U. W., 104 Mo. App. 1; Smith v. Woodmen of the World, 179 Mo. 119; Boyce v. The Royal Circle,

99 Mo. App. 349; Borgraefe v. Lodge Knights and Ladies of Honor, 22 Mo. App. 127; Knights of Columbus v. Burroughs, 107 Va. 681, 60 S. E. 40, 17 L. R. A. N. S. 246.]

It is only in those cases where the language of the by-laws permits of no other construction, that the courts hold that the mere failure to pay an assessment within the time *ipso facto* works a suspension or forfeiture. In such cases the member is summarily deprived of his rights in the order, and such action is not favored, and, therefore, such provisions are always strictly construed by the courts in favor of the member and against the order. [Puhr v. The Grand Lodge German Order of Harugari, 77 Mo. App. 47; Lewis v. Benefit Association, 77 Mo. App. 586.]

The respondents claim that the assured paid every assessment legally made, and therefore, was in good standing at the time of his death. If this claim is well founded, the plaintiff must prevail, regardless of any other point in the case. In order to authorize a suspension for the non-payment of an assessment, it is absolutely necessary that the assessment should have been made in strict accordance with the by-laws of the association. [Garretson v. Equitable Mutual Life Association, 61 N. W. 952; Miles v. Mutual Reserve Fund Life Association, 84 N. W. 159; Bates v. Detroit Mutual Benefit Association, 17 N. W. 67; Baker v. Insurance Co., 51 Mich. 243, 16 N. W. 391; Underwood v. The Legion of Honor, 66 Ia. 134, 23 N. W. 300; Association against Spies, 114 Ill. 463, 2 N. E. 482; Insurance Co. v. Birmbaum, 116 Pa. St. 565, 11 Atl. 378.]

Appellant's by-law as to how, when, and by whom, assessments are to be made, is set out in a former part of this opinion, and by an examination of it, it will be found that the board of directors is required, at each regular meeting, to make an assessment on the different members, according to their ages, in certain specific sums. It stands admitted that the board of directors did

not do this, but the secretary, monthly, sent out notices of the assessments, according to the by-laws.

The respondents contend because the board at its regular meeting, did not levy the assessment and make a record thereof, that the assessments were illegal, and therefore a failure to pay the same could not forfeit any rights of the assured. The position is not without authority to support it, and it has been declared sound by the Supreme Courts of Iowa and Michigan. [Garretson v. Equitable Mutual Life Association, 61 N. W. 952; Underwood v. Legion of Honor, 66 Ia. 134; Baker v. The Citizens Mutual Ins. Co., 51 Mich. 243; Bates v. The Association, 51 Mich. 587.]

In the Underwood case, above cited, the subordinate lodge of the Iowa Legion of Honor was required to make assessments. The lodge did not do so, but the secretary thereof notified Underwood that a member of the order had died, and directing Underwood to remit the amount required to pay such loss, and if he failed to do so, he would stand suspended. Underwood died and a suit was brought on his certificate. The defendant sought to show that it was the custom of the lodge for the secretary to make the assessment in the manner above stated, but the court refused to permit such evidence until it was shown that Underwood had knowledge of such custom, and that he was not required to pay a death loss until the subordinate lodge of which he was a member, made an assessment on him therefor.

In the Bates case, assessments were to be levied by the trustees and payable within thirty days after notice from the secretary. It appeared that the trustees as a body, ordered no assessments, but two persons supposed to be trustees and managers of all the business of the association, made the assessment and sent out notices thereof. The court held that such assessments were not made in accordance with the by-laws, and the member could not be suspended for not paying them.

In the Baker case above cited, the by-laws provided

that the board of directors should order the assessment, and the secretary prepare it and it should be signed by a majority of the board and secretary, and placed on file, and it was held that a paper on file not made in pursuance of a resolution of the board, was not a sufficient assessment, and a forfeiture on a policy for non-payment of such assessment would not be sustained. In the Baker case, the board of directors had passed a resolution ordering all policies to be assessed at certain rates, but notwithstanding the levy of the assessment by the board of directors, yet the other provision of the by-law in regard to having the same signed by the secretary and the majority of the board, not being complied with, the whole assessment was irregular, and no forfeiture could be enforced on account thereof. The court said: "Until the assessment is put in shape, there is nothing to found notice on and nothing to create legality. The purpose of the by-law is to secure the personal attention and oversight of the officers to the preparation of the assessment, so as to secure accuracy and to prevent omission and mistakes in regard to the persons responsible, and the amounts of their dues. Every member is interested in having assessments correct, and in having others properly charged for their share of the common burden."

The case in issue is different from the above cases only in one particular. Under the by-law of the appellant, assessments are fixed in a definite sum, payable at regular periods. Without these provisions, we would hold that the failure of the board to make the assessment at each regular monthly meeting, prevented the association from suspending the assured for not paying an assessment. Under the by-law in this case, the assured knew that he was bound to pay monthly, the sum of six dollars, and if he did not pay the same within thirty days after notice by the secretary, he was liable to suspension. The fact that the board of directors

139 App—40

did not formally levy the assessment in no wise altered his position. In fact, so far as he knew, the assessments had been regularly made and he did not refuse to pay the same on account of any omission of the board of directors.

The point is a close one and if there was any evidence that the failure of the board to comply with the by-law, in any manner changed the position of the assured in regard to paying his assessments, we would hold the assessments void and a forfeiture or suspension could not be based on the non-payment of the same. But in view of all the facts and circumstances in the case, we will hold the assessments were legal.

The respondents assert that if the assessments were legally made, the failure to pay the same did not *ipso facto* work a forfeiture, but that some affirmative action was required by the board of directors, and none was taken. The by-laws governing this question are as follows:

"Section 10. The board shall at each regular meeting, suspend and strike from the roll of membership, all members who are in arrears for assessment, and cause to be sent to each active member of the association, a list of the names of all such members.

"Section 11. A notice of assessment sent by mail, postage prepaid, to a member at the last address given by him to the secretary, in writing, shall be considered legal notification, and such member shall be bound thereby, although it may not reach him in the same manner as though he had received it.

"Section 12. Assessments shall be paid to the Treasurer at the office of the association in St. Louis, or be received by him at that place, within thirty days from the date of notice.

"Section 13. Each member who fails to pay his assessment within the time prescribed, shall be suspended, and his name stricken from the rolls of membership,

and such member shall not, until after being reinstated, be entitled to any rights of membership.

"Section 17.   Membership in the association shall be terminated by (1) the failure to pay such assessment as may be levied within the time prescribed. . . . "

Upon first reading, the decisions of this and other States, would appear to be in conflict upon the question, whether the failure to pay the assessment within the time specified *ipso facto* works a forfeiture, or whether some affirmative action is required to be taken. But upon further examination, it will be determined that very little conflict actually exists, and the cases which hold that a failure does not *ipso facto* work a forfeiture are distinguishable by the presence of a modifying clause or a different wording of the provision.   [Note to Knights of Columbus v. Burroughs, 17 L. R. A., N. S. 246.]

In the present case the by-laws provide for the board of directors suspending a member who is in arrears. Where such provisions are found in the by-laws, the courts are quite unanimous in holding that in addition to failure to pay the assessment within the time specified, some affirmative action is required by the board. [Lewis v. Western Funeral Benefit Association, 77 Mo. App. 586; Brooks v. Conservative Life Insurance Co., 132 Ia. 377, 106 N. W. 913; Order of United Commercial Travelers v. McAdams, 125 Fed. 358; Independent Order of Forresters v. Haggarty, 86 Ill. App. 31; Schue v. Grand Lodge, 17 Fed. 214; Northwestern Travelers Association v. Schauss, 35 N. E. 747.]

This rule should find special favor with the courts in cases where the by-laws are in the form adopted by the appellant.   Under these by-laws, if a member had paid assessments for years and was ready and willing at all times to pay assessments whenever notified, yet if the secretary mailed a notice of an assessment which is subsequently lost in transit so the member never receives it, all of his rights as a member of the association can be

forfeited without further notice to him. It seems highly proper that such an arbitrary power should not be left to the bookkeeper of an association of this kind, but the matter should be finally passed upon by the board of directors or trustees, in order that no injustice may be done.

We sustain the contention of the respondents, that a failure to pay the assessment within the time specified, did not *ipso facto* suspend the assured as a member of the appellant association.

The evidence shows that after the assured, through his employers, remitted for assessment 101, no further notices of assessments were ever mailed to him by the secretary. Under the by-laws, the first regular meeting of the board when the assured could have been suspended for not paying assessment 101, was August 3, 1907. At this meeting no quorum was present and the meeting adjourned to August 9, at which time the board of directors made the following record: "Attached list of resignations and suspensions were ratified." In this list appears the name of the assured as having been suspended July 15, 1907. The position of respondents is that this was not a suspension, as the by-laws required. It is claimed that the board of directors did not suspend the assured, but simply ratified what had already been done on July 15, 1907. The record of the board of directors must be held to be irregular. As said by Judge BROADDUS in Seehorn v. Catholic Knights of America, supra: "The action of suspension is one of great importance to the member, for it has the effect, not only of depriving him, as such, of the fraternal benefits of the order, but it operates as a forfeiture of the certificate of insurance. A forfeiture conditioned to take effect upon suspension of a member of a fraternal beneficial association, does not attach until the member is actually and legally suspended. Such a defense is *strictissimi juris* not favored by the law, and can only be invoked when every step necessary

to create it has been taken with technical accuracy and completeness."

This declaration of law has special application to the present case. The respondents are claiming that the assured paid every assessment of which he had notice, and that prompt payment was made of assessment 101, and the same received by the association, and yet it is claimed the assured was suspended for not paying assessment 101. The record shows that the board of directors did not give the matter the attention that its importance required. They undoubtedly acted solely on the act of the secretary who had taken the money sent to pay assessment 101, and credited it to another assessment. The by-laws nowhere provided for the secretary suspending a member and the board ratifying that act. The duty of passing upon the important question of depriving a member of rights in the association was placed by the members of the association in the board of directors. This duty, they could not delegate to the secretary. [Garretson v. Equitable Mutual Life End. Assn., 61 N. W. 952.]

In addition to the above, the secretary testified that he did not suspend the assured, and made no effort to do so. If this is true, what was the board of directors ratifying? The board of directors undoubtedly intended to suspend all members who had not paid the assessment within the time specified, and thereby rendered themselves subject to suspension. And if the evidence showed that the assured had not paid his assessment, after a legal notice, then we do not believe that the irregularity of the board acting on this suspension would be so material as to make the suspension illegal. If this suspension is to be sustained and the rights of the assured forfeited, it must be because he failed to pay assessment 101. The secretary's book shows that he paid all assessments, including 100, and the secretary reported to the board that the member had not paid assessment 101, and upon this claim by the secretary, the action of the board

in suspending the assured, was based. If the assured paid assessment 101, then the action of the secretary and board in attempting to suspend him for non-payment of the same was absolutely void, and the plaintiffs are entitled to recover.

By examination of the by-laws copied in this opinion, it will be found that the secretary is required to mail a notice of each and every assessment to the assured. In accordance with this by-law the secretary sent notice of assessment 100 to the assured, specifically notifying the assured that assessment 100 had been levied and must be paid before a certain time to save the member the benefits of his certificate. In due time the agent of the assured sent to the secretary the amount named in this notice, and specifically designating it in payment of assessment 100. The secretary erased the "100" and wrote in "99" and sent a receipt for assessment 99. The same thing occurred when assessment 101 was levied, and when the assured remitted for this assessment 101, the secretary applied it to assessment 100 and mailed a receipt to the assured therefor.

The appellant asserts that in as much as assessment 99 had not been paid, that the secretary applied the remittance for assessment 100 on 99, to preserve the membership of the assured. The respondents claim that remittance had been made for all assessments of which notice had been given, and therefore the secretary had no authority to divert the remittance to pay assessment 100 to 99, and that when they remitted to pay assessment 101, the secretary was without authority to apply it to assessment 100.

The general rule is, that when a creditor holds more than one claim against his debtor, the latter, on making a payment, has the right to direct upon which debt it shall be credited, and it is only where no direction is given that the creditor can make the application. [Brown v. Brown, 124 Mo. 79; Gantner v. Kemper, 58 Mo. 570; Beck v. Haas, 111 Mo. 264; Sparks v. Jasper

County, 213 Mo. 218.] A debtor may, at or before the time of payment, prescribe the application of such payment, and it is the duty of the creditor to so apply it. [Amer. Enc. of Law, vol. 18, 234.] If the creditor receives money with the direction from the debtor to appropriate it to a particular debt, it must go to that debt, no matter what the creditor may say at the time, and an appropriation made by a debtor cannot be changed by the creditor without the debtor's consent. [City of Lincoln v. Street Railway Co., 93 N. W. 766; Amer. Enc. of Law, Vol. 18, 235.]

The appellant meets this argument as follows: First, that the secretary applied the remittance to the payment of a former assessment, and thereby kept the assured in good standing, while if he had applied it as directed by the assured, the former assessment would not have been paid, and the assured would have been subject to suspension. Second, that he mailed the receipt to the assured showing the application, and that it was kept without objection and thereby acquiesced in by the assured.

The first position seems to be answered in Stewart v. Hopkins, 30 Ohio St. 502, wherein it is said: "The creditor cannot divert a payment made by his debtor from the appropriation made by him, upon mere equitable considerations, that do not amount to an agreement between the parties, giving the creditor a right to appropriate the payment otherwise than directed by the debtor, though mere equitable consideration may control where the payment is made without designating its application."

This rule is recognized and followed in Life Ins. Co. v. Altschuler, 55 Neb. 341, 75 N. W. 862; City of Lincoln v. Lincoln Street Railway Co., supra.

We believe the rule to be sound. To otherwise declare would be to do away with the general proposition that the debtor has the right to direct the application of his payments.

Can it be said that the assured consented that the money sent by him to pay assessment 100, might be applied to payment of assessment 99, and that the money sent to pay assessment 101, might be applied on assessment 100? If he did, then such application by the secretary would be legal, and assessment 101 would remain unpaid. [Byrd v. Benton, 56 S. E. 450; Sweeney v. Pratt, 39 Atl. 182.]

In determining this question, it must not be overlooked that the assured was claiming at said time that if notice of assessment 99 had ever been mailed to his address, that it had been paid. In other words, as stated heretofore herein, the assured was claiming that remittance had been made for all assessments of which notice had been given. It is true the appellant's testimony shows that notice of assessment 99 was mailed, as provided by the by-laws, but the testimony of the witness who made the payments for Burchard, was to the effect that funds were on hand to pay, and that he did pay all assessments of which notice was received. This left the matter in dispute. [Bange v. Supreme Council Legion of Honor, 128 Mo. App. 461.]

Why would the agent of the assured consent to the application of the payment to an account he was denying had any existence? The testimony shows that when assessment notice 101 was received, that remittance was made for it, and specifically directing that the remittance be applied on assessment 101. If the assured had consented that his remittance to pay 100 should be applied on 99, then he must have known that 100 had not been paid, and why would he remit for 101 and leaving 100 admittedly unpaid. The only conclusion to be drawn from the testimony is that the agent of the assured did not notice the receipts sent to him were not for the identical remittance he had made. If this be true, how can we, having due regard for the abhorrence the courts have for technical forfeitures, hold

that the assured by this acquiescence forfeited all his rights as a member of the society?

The undisputed evidence shows that respondent's father for ten years was a member of the defendant society, and during all this time paid his assessments, amounting to about $600, and during the last four years he was in the employ of the wholesale clothing house and arrangements were made by which notice of his assessments were sent to this house and remittances all made therefor. It is further shown that after he quit the employ of the firm, his son took his place and arrangements were made to continue the payment of assessments as before.

When notice of assessment 100 was mailed, remittance was made for it, but the secretary of the association simply mailed a receipt for the remittance, but giving a different number to the assessment from which it was remitted to apply, but without any other word or suggestion to the assured or his agent that he had done so, or that assessment 100 still remained unpaid. And when he received the remittance for assessment 101, he must have known that the assured was laboring under some misunderstanding, or that he had not received notice of assessment 99, but he made no effort to correct the matter, but received the money and gave no other notice to the assured of the application he had made of it, except to mail a receipt for assessment 100.

It is true on July 2d, he did write a letter stating that he had mailed notice of assessment 101, and payment thereof had been neglected. The truth is that payment had not been neglected, but a remittance had been made therefor. But let this be as it may, on August 13, the secretary received a letter from the wholesale house, returning unopened this letter of July 2, and stating that Mr. Burchard's address was Waynesville, Mo., and that he was no longer in the employ of the firm.

Under the circumstances existing at that time, it seems to us that a proper regard for "mine and thine"

would have caused the secretary to write a letter to the assured at Waynesville. He was bound to know from the remittances that a mistake or misunderstanding existed between them concerning the payments of the assured, and by writing a letter to Waynesville, the matter might have been adjusted and the expenses of this lawsuit saved.

The assured had for many years been a "brother" in the association. In an organization of this kind, a square deal between the members of the order should at all times be paramount in their dealings with each other. If there was any testimony in this case showing that the assured intended to abandon the order, then we would not hesitate to declare that he was no longer entitled to its benefits. But under a fair interpretation of the evidence, the assured went to his grave believing that his assessments were paid in full, and that his children would receive the insurance he had taken out and carried for them. There is not a scintilla of evidence of any intention on his part to abandon the order. On the contrary, the evidence is uncontradicted that he made arrangements to have his assessments paid.

Under these circumstances we should, and cheerfully do, give full effect to the almost unanimous decisions of the courts of this and other States, that forfeitures are not favored, and the burden of proving that a person, by his conduct, has forfeited substantial rights, is upon the party asserting the forfeiture.

We do not believe there is any substantial evidence in the case to justify us in finding that the assured consented to the secretary diverting his remittances and applying them otherwise than as directed, and therefore, the defendant has failed in its burden of proving that assured had forfeited his contract, and hence, it is our duty to affirm the judgment, and it is so ordered. All concur.